

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-09-009-CV

IN RE J.W.L.

------------

FROM THE 325TH DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION

------------

Relator, J.W.L.,[1] filed this petition for writ of mandamus attacking the authority of the trial court to approve the agreed orders that relator had entered into with his former spouse's parents (the grandparents) regarding the child, M.W.L., and to enter subsequent temporary orders. We deny relief.

------------

[1] The names of the parents and parties subject to this original proceeding have been replaced with their initials or their relationship to the child in accordance with section109.002(d) of the family code. Tex. Fam. Code Ann. § 109.002(d) (Vernon 2008); *see* Tex. R. App. P. 9.8 cmt.

## Background Facts

Relator and his former wife entered into an agreed final decree of divorce in December 2000 regarding both property and custody of their daughter, M.W.L. They were both named joint managing conservators with the mother having primary custody. They entered into one modification on February 5, 2004. On October 10, 2007, the mother and her parents, with her consent, filed a petition to modify the parent-child relationship regarding the existing orders, whereby the grandparents sought primary custody of M.W.L. upon the mother's anticipated death. On October 17, 2007, the day after the mother's death, the grandparents amended their petition, adding M.W.L.'s stepfather as a party.

Eventually, at a hearing on November 7, 2007, relator and the grandparents entered into an agreed order in the suit to modify the parent-child relationship (Agreed Order). Under its terms, relator was named sole managing conservator and the grandparents were named nonparent possessory conservators and given rights of possession to M.W.L on the second and fourth weekends of each month during the school year, as well as some possession during the summer, the Christmas holiday, the child's birthday, and the deceased mother's birthday. The Agreed Order also required both parties to give each other at least sixty days' prior written notice of a change of address.

2

It contained no residence restriction, giving relator the right to determine M.W.L.'s primary residence. The Agreed Order recited that the court had retained jurisdiction of the case and of all parties and that no other court had obtained continuing exclusive jurisdiction over the case. It was signed by all parties and their respective counsel, proved up at the November 7, 2007 hearing, and signed by the judge on January 18, 2008.

Relator and the grandparents operated under the Agreed Order for nearly seven months, but when the grandparents went to relator's home to pick M.W.L. up for their extended one-week summer visitation, the home was abandoned and M.W.L. was not there. Relator had moved M.W.L. to Idaho without giving the grandparents the sixty days' notice he was required to provide under the terms of the Agreed Order. Furthermore, relator left misleading messages stating he was relocating with M.W.L. to Florida. He refused to answer any calls. Eventually, by filing a petition for writ of habeas corpus, the grandparents were able to locate and return M.W.L. to Texas for emergency hearings on motions to enter and to enforce temporary orders. A temporary orders hearing took place on July 18, 2008. Despite being served with notice and being ordered to appear, relator did not appear. The trial court entered temporary orders and ordered that temporary custody of M.W.L. be given to the grandparents, that no custody be given to relator, and that if

3

access should be given to relator, it would be supervised through Family Court Services.

On or about August 4, 2008 relator filed a special appearance, plea of forum non conveniens, original answer, affirmative defenses, request for the court to decline jurisdiction, and special exceptions. In September 2008, relator filed a motion to vacate the order to return the child, among other pleadings, and on October 7, 2008, the trial court held a hearing on relator's special appearance. Relator appeared and testified but the trial court denied his special appearance. That was the only matter heard that day, and the other matters were not set until January 29 and 30, 2009. M.W.L. has remained with her grandparents since that time, and although given the opportunity to pursue other matters at the January 2009 hearing on his motion to vacate, such as temporary visitation, relator presented only his motion to vacate and a request for an indigency finding and appointment of counsel.[2]

---

[2] Had relator been successful in his motion to vacate, *custody* might have been returned to relator; however, relator never asked the trial court to modify the temporary orders so that he could have *access* or *visitation* with his daughter. Relator only asked for that relief from us in this mandamus proceeding which we tried to accommodate.

During the hearing on January 29, 2009, the trial court specifically asked relator whether he was requesting any other relief, including any hearing on temporary orders on possession or access to the child. Relator did not make any such request, so the hearing concluded. Under these circumstances, we

4

This mandamus was filed on January 8, 2009. Although we ultimately deny mandamus relief in this matter, because relator is convinced there remains a standing defect that might impact the trial court's jurisdiction, we will discuss that issue.

## Issues Raised in This Mandamus Proceeding

Relator raises four issues in this proceeding: 1) whether the trial judge abused his discretion when he approved the January 18, 2008 Agreed Order entered into between relator and the grandparents in the underlying case; 2) whether the trial judge abused his discretion when he issued the July 18, 2008 temporary orders granting temporary possession of M.W.L. to the grandparents and removing her from relator's possession; 3) whether the trial judge abused his discretion when he denied relator's special appearance on October 28, 2008; and 4) whether the trial judge abused his discretion when he did not rule on relator's motion to vacate the July 18, 2008 temporary orders.[3]

---

do not see how the concurrence justifies its request to the trial court to "reconsider its temporary orders" when such relief has not yet been requested by relator. *See In re Smith*, 263 S.W.3d 93, 96 (Tex. App.—Houston [1st Dist.] 2006, orig. proceeding).

[3] We no longer need to address relator's fourth issue because the trial judge ruled on relator's motion to vacate at the conclusion of its January 2009 hearing and denied that relief; therefore, the issue is moot.

**Temporary Orders and Special Appearances in Family Law Cases**

Generally, Texas appellate courts only have appellate jurisdiction over appeals from final judgments unless a statute specifically allows a particular type of interlocutory appeal. *Ogletree v. Matthews*, 262 S.W.3d 316, 319 n.1 (Tex. 2007); *In re Roxsane R.*, 249 S.W.3d 764, 774 (Tex. App.—Fort Worth 2008, orig. proceeding). Temporary orders entered in family law cases are not appealable. Tex. Fam. Code Ann. § 105.001(e) (Vernon 2008); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7) (Vernon 2008) (listing types of appealable interlocutory orders); *In re Roxsane R.,* 249 S.W.3d at 774–75. Normally, the grant or denial of a special appearance is subject to an interlocutory appeal; however, if it involves a family law matter, there is no such right to an interlocutory appeal. Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7); *see CHEK Inv., L.L.C. v. L.R.*, 260 S.W.3d 704, 706 (Tex. App.—Dallas 2008, no pet.). Therefore, we conclude and hold that the July 18, 2008 temporary orders, the October 28, 2008 denial of the special appearance, and the February 6, 2009 order denying relator's motion to vacate were not subject to interlocutory appeal and therefore are all *potentially* subject to mandamus review for a determination as to whether the trial court abused its discretion. *See, e.g.*, *In re Derzapf*, 219 S.W.3d 327, 334 (Tex. 2007) (orig. proceeding). However, all of the substantive challenges asserted against

6

the July 18 temporary orders, the October 28 denial of the special appearance, and the February 6 order denying relator's motion to vacate are tied directly to and contingent upon a successful challenge to the standing issue raised by relator in his collateral attack against the Agreed Order he entered into with the grandparents, which we now turn to.

**Was the January 18, 2008 Agreed Order Void?**

The Agreed Order entered between relator and the grandparents is a different matter with respect to appealability. The order was agreed to by relator and the grandparents to settle the modification suit filed by one of the managing conservators (mother) and the grandparents shortly before M.W.L.'s mother's death. While relator says he objected to jurisdiction at the time and now contends he was "forced under color of law to endure processes that culminated in a putative agreement between himself and the [grandparents] regarding his and the [grandparents'] legal status vis-a-vis [M.W.L.]," nothing in this mandamus record indicates that relator ever appealed the Agreed Order, which became final and appealable on January 18, 2008. *See* Tex. R. App. P. 25.1, 26.1. Unlike the other orders relator seeks to challenge, the Agreed Order was appealable, but relator never appealed it. *See* Tex. R. App. P. 26.1(b); *In re K.L.V.*, 109 S.W.3d 61, 66–67 (Tex. App.—Fort Worth 2003, pet. denied). He now seeks to collaterally attack it by this proceeding some

7

twelve months later. *See*, *e.g.*, *In re A.G.G.*, 267 S.W.3d 165, 169 (Tex. App.—San Antonio 2008, pet. denied); *Tarrant County v. Denton County*, 87 S.W.3d 159, 174 (Tex. App.—Fort Worth 2002, pet. denied). Relator contends, however, that the July 2008 temporary orders and the denial of the special appearance and of the motion to vacate were erroneously rendered because they were all based upon the allegedly void Agreed Order.

Relator contends that the trial court lacks subject matter jurisdiction over these proceedings and the parties because the grandparents never had standing to bring or maintain suit. While there is no set procedure for pursuing a collateral attack, it is limited to those judgments which are void or involve fundamental error. *See In re A.G.G.*, 267 S.W.3d at 169. Furthermore, we are to presume the validity of a judgment and we may not use extrinsic evidence to establish a lack of jurisdiction; that is, the challenger must show that the judgment is void *on its face. Id.* Here, the Agreed Order recited,

1.    **Appearances**

. . . .

Respondent, **[J.W.L.],** appeared in person and through attorney of record, David L. Cook, and announced ready for trial and has agreed to the terms of this order, to the extent permitted by law, as evidenced by the signature of Respondent and Respondent's attorney appearing below.

8

## 2. Jurisdiction

The Court, after examining the record and the evidence and argument of counsel, finds that it has jurisdiction of this case and of all the parties and that no other court has continuing, exclusive jurisdiction of this case. All persons entitled to citation were properly cited.

Thus, relator not only appeared at the November 7, 2007 hearing with his counsel and agreed to the entry of a modification order with the grandparents at that hearing, but he and his counsel also signed the Agreed Order. Furthermore, the Agreed Order recites that the court determined that it had jurisdiction over both the case and the parties. Similar recitals have been held to be sufficient to establish the jurisdictional basis for a valid judgment. *Id.* Relator is simply unable to show that the Agreed Order is void on its face. We therefore hold that relator's attempted collateral attack on the Agreed Order fails. Even addressing relator's specific complaints regarding the grandparents' standing, we further conclude his challenges fail for several reasons.

First, he states that upon the death of the managing conservator (M.W.L.'s mother), the managing conservatorship ended immediately and, therefore, under *Greene v. Schuble*, 654 S.W.2d 436, 437–38 (Tex. 1983), there was no longer a valid, subsisting court order. He contends that the grandparents failed to show they had sufficient standing under the family code to pursue their suit to modify the parent-child relationship because, under

9

*Greene,* the conservatorship orders between the mother and father ended immediately upon the mother's death. *Id.* at 437–38 (holding portion of decree dealing with conservatorship no longer valid court order governing possession upon death of conservator for purposes of then section 14.10(e) (habeas proceeding for possession of child)). Therefore, he contends the grandparents' suit to modify and the Agreed Order they entered were void conservatorship orders, citing *Greene*. In other words, relator argues that one cannot sustain a suit to modify an order that allegedly no longer exists.

*Greene*, however, does not apply to the issue of standing as presented in this mandamus proceeding. *Id*. at 438. *Greene* was strictly limited to an issue of possession. *Id.* ("Our opinion does not reflect consideration of the merits of the other proceedings pending in the court below. . . . The office of habeas corpus is limited to restoring possession of the children to the person legally entitled to present possession, and may not be used to relitigate custody."). Standing is a threshold jurisdictional issue and is therefore a question related to the jurisdiction of the trial court over the parties and subject matter—here, the trial court's authority to enter the Agreed Order.[4] *In re Smith,*

---

[4] We do not deny that *Greene* might apply to the issue of possession or custody in this case when those issues are actually tried and contested, but relator has not pursued that relief in the trial court yet.

10

260 S.W.3d 568, 572 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding). As noted in the *Smith* case, "[s]tanding does not mean the right to win; it is only a right to be heard." *Id*. at 573 (quoting *In re SSJ-J*, 153 S.W.3d 132, 138 (Tex. App.—San Antonio 2004, no pet.)). We specifically recognized this limitation of *Greene* in *In re P.D.M.*, describing the supreme court's decision as narrowly holding "that the death of a managing conservator renders the custody order not valid or subsisting *only* for purposes of a habeas proceeding." *In re P.D.M.* 117 S.W.3d 453, 460 (Tex. App.—Fort Worth 2003, pet. denied). We also recognized that the supreme court in *Greene* had "specifically contemplated that a suit for modification of the parent-child relationship could follow the death of the managing conservator and the issuance of a writ of habeas corpus to the possessory conservator parent." *Id.* So long as the challenge to the Agreed Order fails, then all of relator's other challenges raised here also fail.

The grandparents contend that they had standing in 2007 to bring the suit to modify under family code section 102.003(a)(9). Tex. Fam. Code Ann. § 102.003(a)(9) (Vernon 2008) (granting standing to a person, other than a foster parent, who has had actual care, control, and possession of the child for at least six months ending not more than ninety days preceding the date of the filing of the petition). Relator claims there is less than sufficient evidence to

11

support this basis for standing. There is no record before us from the November 2007 modification hearing, and while we agree that the later record from the July 2008 habeas hearing is perhaps insufficient alone to support the grandparents' standing for the prior November modification, we do not even need to reach that argument for several reasons.

As previously discussed, relator is prohibited from looking to extrinsic evidence and going behind the recitals in the judgment itself via this collateral attack to challenge the Agreed Order. *In re A.G.G.*, 267 S.W.3d at 169.

Additionally, the grandparents claimed standing under section 102.004 of the family code, which provides that when both parents, a surviving parent, or the managing conservator either *files* a petition or *consents* to a suit by grandparents, the grandparents have standing. *See* Tex. Fam. Code Ann. § 102.004(a)(2) (Vernon 2008).[5] Thus, in this case, M.W.L.'s mother, one of the managing conservators, had already consented to her parents' custodianship by filing the modification suit with her parents before her death. *See* Tex. R. Civ. P. 13 (signing of pleading by attorneys or parties constitutes certificate by them that to the best of their knowledge, information, and

_____

[5] The modification provisions of Chapter 156 are incorporated into these Chapter 102 standing provisions. *See* Tex. Fam. Code Ann. § 156.002(b) (Vernon 2008) ("A person . . . who, at the time of filing, has standing to sue under chapter 102 may file a suit for modification. . . .").

belief . . . [their claim] is not groundless or brought in bad faith), ("Every pleading . . . shall be signed by at least one attorney . . . . A party not represented by an attorney shall sign his pleadings . . . ."); *In re A.M.S.*, 277 S.W.3d 92, 98 (Tex. App.—Texarkana 2009, no pet.) (holding that legislature does not specify when consent must be given or limit the form or nature of consent to any particular type for purposes of compliance with family code section 102.004(a)(2)). The death of one party to a suit does not automatically terminate the litigation, and it may proceed at the insistence of the surviving parties. Tex. R. Civ. P. 155; *Eikel v. Bristow Corp.*, 529 S.W.2d 795, 801 (Tex. App.—Houston [1st Dist.] 1975, no writ). And, as set forth above, *Greene* does not apply to totally terminate the suit simply because of the mother's death because there were other parties in the suit who had already established standing and sought to maintain the suit, i.e., the grandparents. *Greene*, 654 S.W.2d at 438. Therefore, the grandparents had standing at the time they filed the modification suit with their daughter before her death.

For these reasons, the trial court's January 18, 2008 approval of the Agreed Order between relator and grandparents is not void based upon relator's claim that the grandparents lacked standing. We therefore hold that relator's attempted collateral attack on the Agreed Order fails. We overrule his first issue.

13

For the same reasons, the trial court also did not abuse its discretion in issuing temporary orders or by denying relator's special appearance. We therefore also overrule relator's second and third issues. Having already determined that his fourth issue is moot, we deny relator's request for mandamus relief.

                                        TERRIE LIVINGSTON
                                        JUSTICE

PANEL:  CAYCE, C.J.; LIVINGSTON, and WALKER, JJ.

CAYCE, C.J. filed a concurring opinion.

DELIVERED:  June 15, 2009

14



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-09-009-CV

IN RE J.W.L.

------------

FROM THE 325TH DISTRICT COURT OF TARRANT COUNTY

------------

## CONCURRING OPINION[1]

------------

I concur in the result reached by the majority.  I write only to express my concern about the trial court's July 18, 2008 default order that prohibits the father, J.W.L., from "*any* possession or access" to his daughter with no showing that he is an unfit parent.

------------

[1] For purposes of maintaining the confidentiality of this original proceeding, I will refer to all parties by their initials or relationship to the child. *See* Tex. R. App. P. 9.8; *see also* Tex. Fam. Code Ann. § 109.002(d) (Vernon 2008).

## I. Background

J.W.L. and S.W.L., natural parents of M.W.L., divorced in December 2000. The divorce decree named J.W.L. and S.W.L. joint managing conservators. S.W.L. was given the right to designate M.W.L.'s primary residence. The decree was modified in February 2004, with no changes to the conservatorship order.

On October 10, 2007, S.W.L., joined by her parents, G.W. and N.W. ("Grandparents"), filed a "Petition to Modify Parent-Child Relationship." This petition noted that S.W.L. had developed terminal cancer and was not expected to survive. In language tracking section 102.003(a)(9) of the Texas Family Code, the petition alleged that Grandparents had standing to bring the petition "in that they have had actual care, control and possession of the child the subject of this suit for at least six months ending not more than [ninety] days preceding the date of the filing of this petition."[2] S.W.L. and Grandparents sought to have the 2000 decree and 2004 order modified to give Grandparents, upon S.W.L.'s death, the right to designate M.W.L.'s primary residence. The petition further requested that the terms and conditions for J.W.L.'s access to or possession of M.W.L. remain the same as they were in the 2000 decree.

---

[2] *See* Tex. Fam. Code Ann. § 102.003(a)(9) (Vernon 2008).

2

S.W.L. died on October 16, 2007. The following day, on October 17, 2007, Grandparents, joined by S.L. (S.W.L.'s husband at the time of her death, and stepfather to M.W.L.), filed their "First Amended Petition to Modify Parent-Child Relationship," again alleging standing under section 102.003(a)(9) of the family code. Grandparents and S.L. requested that they be appointed conservators with the right to designate M.W.L.'s primary residence.

The trial court conducted a hearing on the amended petition on November 7, 2007. Neither party provided this court with a record from this hearing.

On January 18, 2008, the trial court signed an "Agreed Order in Suit to Modify Parent-Child Relationship" ("Agreed Order"). The Agreed Order recited that the trial court,

> heard this case *and made certain rulings regarding standing*; a recess was taken, and the parties entered into settlement negotiations and reached a final agreement; and the agreement of the parties was read into the record and approved by the [trial court] (emphasis added).[3]

The Agreed Order designated J.W.L. as sole managing conservator of M.W.L. with the right to establish M.W.L.'s primary residence "without regard to

---

[3] In a later-filed trial court brief, J.W.L. notes that he objected to the trial court's jurisdiction before the November 7, 2007 hearing. The Agreed Order indicated that each party agreed to the terms of the order "to the extent permitted by law" and that the trial court "finds that it has jurisdiction of this case and of all the parties."

3

geographic location," appointed Grandparents as non-parent possessory conservators,[4] and established a schedule for each party's possession of and access to M.W.L., including provisions for long distance visitation by Grandparents should J.W.L. move more than 100 miles from Grandparents' residence.

On June 30, 2008, J.W.L. and M.W.L. left Texas and moved to Idaho, without providing Grandparents prior notice as required by the Agreed Order. Grandparents then filed various pleadings, including a petition to modify the parent-child relationship requesting that Grandparents be appointed the persons with the right to designate M.W.L.'s primary residence and that J.W.L. be allowed only supervised access to and possession of M.W.L. J.W.L. was served with Grandparents' pleadings in Idaho days before a scheduled July 18, 2008 hearing. J.W.L. filed a letter with the trial court indicating his inability to appear at the July 18 hearing, but the trial court proceeded with the hearing in J.W.L.'s absence.[5]

---

[4] The Agreed Order dismissed S.L.'s petition with prejudice.

[5] Subsequent temporary orders entered by the trial court stated that J.W.L. "filed an answer and although duly and properly notified, did not physically appear at the hearing and wholly made default." Nothing in the record before this court suggests that at the time of the hearing J.W.L. had filed any "answer" to Grandparents' pleadings other than his letter indicating his inability to appear at the hearing.

After the hearing, the trial court signed temporary orders naming Grandparents temporary sole managing conservators. Despite naming J.W.L. a temporary possessory conservator, the temporary orders provided that J.W.L. "is not granted any possession or access with [M.W.L.] until further order of this court." The temporary orders further stated that any future permission granted by the court for J.W.L. to have visitation with M.W.L. would be "supervised visitation with [M.W.L.] under the supervision of the Tarrant County Family Court Services."

J.W.L. then filed a special appearance and a motion to vacate the trial court's order to return M.W.L. to Grandparents. In the motion to vacate, J.W.L. argued that Grandparents never had standing to file a petition to modify the parent-child relationship and, therefore, all of the trial court's orders following S.W.L.'s death, including the Agreed Order, were void. J.W.L. further requested that the trial court order "the immediate return of [M.W.L.]" to his custody.

On September 22, 2008, J.W.L. submitted a letter to the trial court in which he further complained of the trial court's "void" order depriving him of possession to M.W.L. and informed the court that "[t]his litigation has devastated me financially. I cannot afford to travel to Texas for hearings." He

5

again asked the court to vacate the prior orders and return his daughter "to her home here with me without delay." He further alleged:

> *Time is of the essence in this matter*. The Court's Orders have unlawfully removed my child from my care; and her continued emotional and physical well-being is of paramount importance to me. [M.W.L.'s] mother died less than a year ago, and this tumultuous litigation and what amounts to no less than State-sanctioned kidnapping is quite possibly inflicting serious emotional harm on her.

On October 7, 2008, the trial court conducted a hearing on J.W.L.'s special appearance, which the trial court subsequently denied. J.W.L. then filed this original proceeding in which he has asked that we vacate the trial court's orders as void and order that M.W.L. be returned to his custody.[6]

## II.  The Parent-Child Relationship

The right to the companionship, care, custody, and control of one's own child is a fundamental liberty interest far more precious than any property right.[7] Thus, "the relationship between parent and child is constitutionally protected."[8]

---

[6] One of the four issues J.W.L. raises—that the trial court should be compelled to hear his motion to vacate—has been rendered moot. The trial court conducted a hearing on that motion on January 29, 2009, and denied the motion by written order on February 6, 2009.

[7] *In re M.S.*, 115 S.W.3d 534, 547–48 (Tex. 2003) (citing *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388 (1982)).

[8] *Troxel v. Granville*, 530 U.S. 57, 66, 120 S. Ct. 2054, 2060 (2000) (citing *Quilloin v. Walcott*, 434 U.S. 246, 255, 98 S. Ct. 549 (1978)).

In fact, it is "cardinal" that the custody, care, and nurture of a child reside in the parents.[9]

Both parent and child have a substantial interest in the justice of a decision affecting their ability to have a relationship with one another.[10] The State also has an interest in protecting the welfare of its children; an interest that "must initially manifest itself by working toward preserving the familial bond" between a parent and child unless that parent will not provide a safe, stable environment.[11]

While the temporary grant of custody to another or the limitation of a parent's access to a child is not tantamount to absolute termination of parental rights, trial courts must tread very carefully when they infringe upon a parent's ability to participate in child rearing.[12] The Supreme Court of Texas has recognized that custody determinations that restrict a parent's access to a child

---

[9] *Id*. at 65–66, 120 S. Ct. at 2060 (citing *Prince v. Massachusetts*, 321 U.S. 158, 166, 64 S. Ct. 438 (1944)).

[10] *M.S.*, 115 S.W.3d at 547 (recognizing this substantial interest in context of termination of parental rights).

[11] *Id*. at 548 (original emphasis removed).

[12] *See Troxel*, 530 U.S. at 72–73, 120 S. Ct. at 2063–64.

can risk a significant deprivation similar to termination of the relationship.[13]

"*[A]ny* significant risk of erroneous deprivation [of parental access to a child] is unacceptable."[14]

The Texas Family Code's statutory scheme focuses on the children's welfare and best interests.[15] The legislature has instructed courts that "[t]he terms of an order that denies possession of a child to a parent or imposes restrictions or limitations on a parent's right to possession of or access to a child may not exceed those that are required to protect the best interest of the child."[16] Consistent with this legislative mandate, Texas appellate courts have

---

[13] ▲ *See Lewelling v. Lewelling*, 796 S.W.2d 164, 168 n.8 (Tex. 1990) (recognizing that while proceeding is not technically termination of parental rights action, it may have such effect where mother without adequate transportation lives some distance from son and existence of visitation rights likely will be insufficient to allow her "to have a substantial role in her child's upbringing").

[14] ▲ *M.S.*, 115 S.W.3d at 549 (emphasis added).

[15] ▲ Tex. Fam. Code Ann. § 153.002 (Vernon 2008) ("The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child."); *M.S.*, 115 S.W.3d at 549; *Lenz v. Lenz*, 79 S.W.3d 10, 14 (Tex. 2002) (reiterating legislature's mandate that best interest of child is primary consideration).

[16] ▲ Tex. Fam. Code Ann. § 153.193 (Vernon 2008) ("Minimal Restriction on Parent's Possession or Access"). Because trial courts are the factfinders that determine what is in the children's best interest, appellate courts have applied an abuse of discretion standard of review. *See, e.g.*, *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). The discretion courts have in

recognized that it is in the best interest of children to have maximum reasonable time living with parents.[17]

The legislature has further recognized parents' abilities to act in the best interests of their children by applying a presumption that they do so.[18] Consistent with this presumption, the United States Supreme Court has recognized that so long as a parent is fit, there is normally no reason for a court to inject itself between parent and child or to disturb that parent's rearing of his or her children.[19] In other words, trial court interference with the right of a fit parent to bring up his or her own child impacts a fundamental right and may violate the Due Process Clause.

---

determining the factual issue of children's best interests, however, is not unfettered. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (non-exhaustively listing factors courts consider in determining whether termination of parental rights is in children's best interests); *see also In re Jane Doe 2*, 19 S.W.3d 278, 282 (Tex. 2000) (applying non-exhaustive list of *Holley* factors "for determining a minor's best interests" to factual determination of best interest of minor in parental notification case).

[17] *Wood v. Wood*, 510 S.W.2d 399, 400 (Tex. Civ. App.—Fort Worth 1974, no writ). In *Wood*, we lamented how divorced parents often allow their animosity towards one another to overshadow the concern that children maintain healthy relationships with the other parent, harming the children in the process. *Id.* This concern is especially true when, as in this case, one of the parties is a non-parent and the animosity between the parent and non-parent deprives the child of a normal relationship with the parent.

[18] Tex. Fam. Code Ann. § 153.131(a) (Vernon 2008).

[19] *See Troxel*, 530 U.S. at 68–69, 120 S. Ct. at 2061.

9

### III. Potentially Significant Deprivation of J.W.L.'s Parental Rights

In this case, the trial court's "temporary" orders tread very closely to a significant deprivation of J.W.L's parental rights similar to termination of the parent-child relationship. By denying J.W.L. "any possession or access" to his child, the trial court has treated the grandparents' statutory right to visitation as paramount to J.W.L.'s constitutional rights as a parent.[20] This not only constitutes a potential violation of the Due Process Clause of the United States Constitution but also runs directly counter to stated legislative policy favoring parental involvement in children's lives. Neither the Due Process Clause of the United States Constitution nor the laws of this state permit a trial court to indefinitely deprive a presumably fit parent of his fundamental rights to care, custody, and control of his child simply because the parent infringed on a grandparent's visitation rights.[21]

---

[20] The temporary orders depriving J.W.L. of any access to M.W.L. are predicated on (1) J.W.L. having moved from Texas to Idaho without providing notice even though he had the unlimited right to determine M.W.L.'s primary residence, (2) vague allegations of J.W.L. failing to take M.W.L. to a doctor when she had a fever or to a dentist to obtain orthodontic care, and (3) Grandparents' hearsay allegations of assaultive behavior by J.W.L. against a girlfriend whom Grandparents cannot even identify by name.

[21] *See Troxel*, 530 U.S. at 72–73, 120 S. Ct. at 2063–64.

## IV. Conclusion

I empathize with the grandparents' plight in this case. The father's conduct in taking M.W.L. out of state in violation of the agreed orders was wrong and potentially harmful to M.W.L. But, the trial court's order indefinitely depriving this presumably fit father of his right to care, custody, and control of his daughter is equally troubling. The order is not only potentially harmful to M.W.L. but also raises the specter of potential due process violations that are beyond our reach in this proceeding.[22] Therefore, while I concur in the majority's decision to deny J.W.L. the relief he has requested on jurisdictional grounds, it is my hope that the trial court will reconsider its temporary orders and, based upon J.W.L.'s repeated requests for custody of his daughter throughout the course of the underlying case, enter appropriate orders granting J.W.L. possession and access to his daughter during the pendency of the

---

[22] J.W.L. limited his mandamus petition to the jurisdiction issue and did not ask this Court to determine whether the trial court abused its discretion by ordering that J.W.L. shall have no access to his daughter. Thus, the parties and the trial court should not construe this court's denial of the mandamus petition as reflecting how this court would rule if presented with that issue.

underlying case to avoid the significant risk of erroneously depriving J.W.L. of his fundamental rights as a parent.[23]

JOHN CAYCE
CHIEF JUSTICE

DELIVERED: June 15, 2009

---

[23] *See M.S.*, 115 S.W.3d at 549. The majority contends that the trial court should not reconsider its July 2008 order denying J.W.L. access to his daughter because J.W.L. has only asked that she be returned to his "custody." Among other problems with this rationale, the majority overlooks the fact that the trial court has no discretion to enter an order denying possession of a child to a parent or to restrict or limit a parent's right to access to a child beyond what is required "to protect the best interest of the child." Tex. Fam. Code Ann. § 153.193 (Vernon 2008). J.W.L. seeks to set aside a trial court order that he contends has wrongfully deprived him of his parental rights to possession of and access to his daughter. Contrary to the majority's contention, Texas law requires him to do nothing more to protect his statutory right under the family code to an order that does not exceed restrictions on his parental rights necessary to protect his daughter's best interest. Whether J.W.L. will actually avail himself of the access granted under such an order given his jurisdictional objections is immaterial to the question of whether he is entitled to such access as a presumptively fit parent.

12