

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-11-00253-CV

IN RE MEGHAN LEWIS                                                RELATOR

----------

## ORIGINAL PROCEEDING

----------

## OPINION

----------

## I. Introduction

Relator Meghan Lewis (Meghan), contending that real parties in interest Ronald and Sandra Carroll (the Carrolls) do not have standing to intervene in the underlying suit affecting the parent-child relationship, seeks mandamus relief from the trial court's July 14, 2011 order denying her motion to strike the Carrolls' petition in intervention. We conditionally grant Meghan's petition for writ of mandamus.

## II. Background

Meghan Lewis and Jason Lewis[1] (Jason) are the parents and joint managing conservators of their only child, a son born in 2004. The record is unclear as to the date of Meghan and Jason's divorce, but the record does contain a May 2008 Order in Suit to Modify Parent-Child Relationship by which Meghan and Jason were appointed as the child's joint managing conservators.[2] The Carrolls are Meghan's parents and the child's maternal grandparents.

On July 1, 2011, Jason filed a third amended motion to modify the parent-child relationship, and the Carrolls filed a first amended plea in intervention.[3] In his third amended motion to modify, Jason requested that he be appointed joint managing conservator of the child with the right to designate the child's primary residence and that Meghan be ordered to pay child support. By their plea in intervention, the Carrolls sought appointment as non-parent joint managing conservators of the child, alleging standing pursuant to family code section 102.004 because Jason had consented to their intervention, and they attached a "Consent to Standing Pursuant to Texas Family Code § 102.004" that Jason had

---

[1]Jason is also a real party in interest and has filed a brief adopting and incorporating the arguments contained in the Carrolls' brief.

[2]The parties' pleadings below also reference a January 23, 2009 Agreed Order in Suit Affecting Parent-Child Relationship as the order sought to be modified, but that order is not in the appellate record. The parties do not dispute, however, that Meghan and Jason are the child's joint managing conservators.

[3]The appellate record does not reflect when the original motion to modify or original intervention were filed.

signed.[4] Meghan filed a motion to strike the Carrolls' intervention on July 8, 2011. The trial court conducted a hearing and denied the motion by written order dated July 14, 2011. Meghan filed her petition for writ of mandamus later the same day, and we issued a stay of the trial in the underlying proceeding pending our resolution of Meghan's petition.

### III. Standard of Review

Mandamus relief is proper only to correct a clear abuse of discretion when there is no adequate remedy by appeal. *In re Columbia Med. Ctr. of Las Colinas*, 290 S.W.3d 204, 207 (Tex. 2009) (orig. proceeding).

A trial court clearly abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding). With respect to the resolution of factual issues or matters committed to the trial court's discretion, we may not substitute our judgment for that of the trial court unless the relator establishes that the trial court could reasonably have reached only one decision and that the trial court's decision is arbitrary and unreasonable. *Id.* at 839–40. This burden is a heavy one. *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding). We give deference to a trial court's factual determinations, but we review the trial court's legal determinations de novo. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding). A

---

[4]*See* Tex. Fam. Code Ann. § 102.004 (West 2008).

3

trial court abuses its discretion if it incorrectly interprets or improperly applies the law. *In re Dep't of Family & Protective Servs.*, 273 S.W.3d 637, 642–43 (Tex. 2009) (orig. proceeding); *Walker*, 827 S.W.2d at 840. A trial court's erroneous legal conclusion, even in an unsettled area of law, is an abuse of discretion. *In re United Scaffolding, Inc.*, 301 S.W.3d 661, 663 (Tex. 2010).

If resolution of an issue requires us to construe statutory language, we apply a de novo standard of review to the statute's construction. *See Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009); *Palladian Bldg. Co. v. Nortex Found. Designs, Inc.*, 165 S.W.3d 430, 436 (Tex. App.—Fort Worth 2005, no pet.) (citing *Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002)). In construing statutes, we ascertain and give effect to the legislature's intent as expressed by the language of the statute. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008). We construe a statute according to the plain meaning of its words unless a contrary intention is apparent from the context, or unless such a construction leads to an absurd result. *Id.* at 625–26; *see also* Tex. Gov't Code Ann. § 311.011 (West 2005) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."). We "also read every word, phrase, and expression in a statute as if it were deliberately chosen and likewise presume that words excluded from the statute are done so purposefully." *Town Hall Estates-Arlington, Inc. v. Cannon*, 331 S.W.3d 793, 795 (Tex. App.—Fort Worth 2010, no pet.) (citing *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981)). Moreover, we consider

4

among other factors the legislative history, the object sought to be attained, and the consequences of a particular construction. *See* Tex. Gov't Code Ann. § 311.023 (West 2005). Once we determine the proper construction of the statute, we determine whether the trial court abused its discretion in the manner in which it applied the statute. *See Palladian*, 165 S.W.3d at 436.

## IV. Abuse of Discretion

Meghan contends in her sole issue that the trial court abused its discretion by denying her motion to strike the Carrolls' plea in intervention because the Carrolls do not have standing under family code section 102.004(a)(2). The Carrolls respond that Jason's consent to their intervention is sufficient under section 102.004(a)(2) because Jason is one of the child's managing conservators.[5]

Family code section 102.004(a)(2) provides that "a grandparent . . . may file an original suit requesting managing conservatorship if there is satisfactory proof to the court that: . . . (2) *both parents, the surviving parent, or the managing conservator* or custodian either filed the petition or consented to the suit." Tex. Fam. Code Ann. § 102.004(a)(2) (emphasis added). Although section 102.004 references an original suit rather than an intervention, this court recently held that the legislature did not intend the burden for an intervention to be higher than that for filing an original suit. *See In re S.B.*, No. 02-11-00081-CV, 2011 WL

---

[5]The Carrolls do not contend that they have standing pursuant to section 102.004(a)(1) or any other family code provision.

5

856963, at *2 (Tex. App.—Fort Worth Mar. 11, 2011, orig. proceeding). Because there is more than one managing conservator in this case, we must determine whether section 102.004(a)(2) requires the consent of both managing conservators before the grandparents have standing to seek appointment as the child's managing conservators.

Meghan contends that the consent of both managing conservators is required because the statute refers to "*the* managing conservator" rather than "*a* managing conservator," and a case from the San Antonio Court of Appeals supports Meghan's interpretation. *See In re S.M.D.*, 329 S.W.3d 8, 10, 14 (Tex. App.—San Antonio 2010, pet. dism'd). In that case, the child's parents were appointed joint managing conservators, and the mother had the exclusive right to establish the child's residency. *See id.* at 10. Shortly after the trial court signed the final order, the mother traveled to Colorado and disappeared (but not with the child). *Id.* The father filed a motion to modify and sought appointment as the child's sole managing conservator. *Id.* The child's maternal grandmother intervened and sought appointment as joint managing conservator with the exclusive right to determine the child's residence. *Id.* The father challenged the grandmother's standing, and the grandmother relied on a power of attorney that the child's mother had signed before her disappearance. *Id.* at 10, 14. Holding that the grandmother did not have standing under family code section 102.004(a)(2), the court stated that "even if [the child's mother] effectively consented to the petition in intervention, standing under section 102.004(a)(2)

6

requires the consent or joinder in the petition *of both parents*." *Id.* at 14. The court further stated that it was "undisputed that [the father] neither joined the petition in intervention nor consented to it." *Id.* Thus, the court held that the grandmother did not establish standing under section 102.004(a)(2) because both parents—who were also the child's managing conservators—did not consent to the grandmother's intervention. *Id.*

The Carrolls contend that the *S.M.D.* court incorrectly interpreted section 102.004(a)(2). They argue that section 102.004 is "clearly disjunctive" because it grants standing to grandparents who have the consent of "both parents, the surviving parent, or the managing conservator or custodian." The Carrolls further argue that "it is clear" from family code chapter 153 that the legislature contemplated that there could be more than one managing conservator[6] and that Jason has the court-ordered independent right, pursuant to the May 2008 Order in Suit to Modify Parent-Child Relationship, to represent the child in legal actions and to make other decisions of substantial legal significance concerning the child as one of the child's joint managing conservators. Thus, the Carrolls assert that because the legislature contemplated that there could be more than one

---

[6]*See* Tex. Fam. Code Ann. § 153.005 (West 2008) (requiring trial court to appoint at least one managing conservator but permitting appointment of a sole managing conservator or joint managing conservators); *Id.* § 153.131 (West 2008) (stating the rebuttable presumption that "appointment of the parents of a child as joint managing conservators is in the best interest of the child" and requiring trial court to appoint parent or parents as managing conservator unless trial court finds doing so would not be in child's best interest).

managing conservator, "it is reasonable to conclude" that the phrase "the managing conservator" means one of the joint managing conservators.[7]

There are several deficiencies with the Carrolls' argument. First, their contention that "*the* managing conservator" means "*one of the* managing conservators" or "*a* managing conservator" attempts to either add words to or alter the existing words of section 102.004(a)(2). *See* Tex. Fam. Code Ann. § 102.004(a)(2); *Cameron*, 618 S.W.2d at 540. Second, the Carrolls ignore the common and ordinary meaning of "the." *See* Tex. Gov't Code Ann. § 311.011 (requiring words and phrases that have not acquired a specialized meaning to be interpreted "according to the rules of grammar and common usage"). Webster's Third New International Dictionary provides that "the" is "used as a function word to indicate that a following noun or noun equivalent refers to someone or something that is unique or is thought of as unique or *exists as only one at a time*." Webster's Third New Int'l Dictionary 2368 (2002) (emphasis added).

---

[7]The Carrolls and the dissent rely heavily on this court's opinion in *In re J.W.L.*, 291 S.W.3d 79, 85–86 (Tex. App.—Fort Worth 2009, orig. proceeding [mand. denied]) for the proposition that the consent of only one of two parent-managing conservators is required to confer standing upon a grandparent. *J.W.L.* is distinguishable, however, because it addressed a collateral attack on a judgment which could succeed only if the challenged judgment was void on its face. *Id.* at 84. Moreover, the language from *J.W.L.* upon which the Carrolls and the dissent rely, *see id.* at 85–86, does not appear in the opinion until well after the majority's dispositive holding that J.W.L's attempted collateral attack on the order failed because he did not show that the challenged order was void on its face. *Id.* at 84. Thus, that language is nonbinding dicta. *See In re Mann*, 162 S.W.3d 429, 434 (Tex. App.—Fort Worth 2005, orig. proceeding) (stating dicta is not binding).

Thus, the legislature's use of "the" before "managing conservator" suggests that it intended "the managing conservator" to apply when there is only one managing conservator. *See id.*

The Carrolls also incorrectly argue that it is reasonable to conclude that "the managing conservator" in section 102.004(a)(2) means "one of the managing conservators" because "it is clear that the Legislature contemplated that there could be one or more managing conservators." Although family code section 153.131 currently sets forth a rebuttable presumption that appointing both parents as joint managing conservators is in the child's best interest, the family code did not contemplate the appointment of more than one managing conservator at the time the legislature enacted the predecessor to section 102.004(a)(2).

The legislature first added the language of section 102.004(a)(2) to the family code in 1985. *See* Acts 1985, 69th Leg., ch. 802, § 1 (current version at Tex. Fam. Code Ann. § 102.004) (adding subsection (b) to former family code section 11.03). At that time, trial courts did not have the authority under chapter 14 of the family code to appoint joint managing conservators absent an agreement of the parties. *See Coles v. Coles*, 676 S.W.2d 226, 227 (Tex. App.—Fort Worth 1984, no writ) (interpreting 1984 version of former family code section 14.01 to prohibit appointment of joint managing conservators absent agreement of the parties); *Gonzalez v. Gonzalez*, 672 S.W.2d 887, 888–90, 891 (Tex. App.—Corpus Christi 1984, no writ) (same). Instead, absent agreement of

the parties, there could be only one managing conservator. *See Gonzalez*, 672 S.W.2d at 891 (reviewing 1984 versions of family code chapter 14 and holding "that it was clearly the legislature's intention that, absent an agreement of the parties, the district court could appoint only one parent as managing conservator of the minor children of the marriage upon divorce."). The family code has, of course, since been amended to provide for the appointment of both parents as joint managing conservators and to set forth the rebuttable presumption that doing so is in the child's best interest. *See* Tex. Fam. Code Ann. § 153.131. But the legislature could not have intended in 1985 for "the managing conservator" language in family code section 102.004(a)(2) to mean "one of the managing conservators" because the statutory scheme in effect at the time did not provide for the appointment of more than one managing conservator. *Compare* Acts 1985, 69th Leg., ch. 802, § 1 (current version at Tex. Fam. Code Ann. § 102.004(a)(2)), with Acts 1973, 63rd Leg., ch. 543, § 1 (current version at Tex. Fam. Code Ann. §§ 153.005, .131).

Furthermore, the Carrolls' interpretation of section 102.004(a)(2)—permitting an intervention by grandparents with the consent of only one of the managing conservators—would have results the legislature could not have intended. *See* Tex. Gov't Code Ann. § 311.023(5) (listing the "consequences of a particular construction" as a factor courts may consider when construing statutes). If we interpreted section 102.004(a)(2) as the Carrolls and the dissent suggest we should, any disgruntled parent who is also one of the child's

managing conservators could solicit his or her own parents to intervene in a modification suit and attempt to exclude the child's other parent-managing conservator from conservatorship.[8]  Given the prevalence of divorce in today's society, the legislature's stated presumption that appointment of a child's divorced parents as joint managing conservators is in the child's best interest, and the unfortunate but frequent situation where a divorced parent (and his or her own parents) do not approve of the conduct of the other divorced parent, it is likely that Texas courts would see a significant increase in the number of grandparent interventions in modification suits if the consent of only one of the managing conservators were required under family code section 102.004(a)(2).

After considering the plain language of section 102.004(a)(2), its legislative history, and the consequences of the competing constructions proposed by the parties in this case, we hold that when both parents have been appointed joint managing conservators, the parent-managing conservators are collectively "the managing conservator" and that each of the parent-managing conservators must consent to the grandparents' intervention before the grandparents have standing under 102.004(a)(2) based on the consent of "the managing conservator."  *See* Tex. Fam. Code Ann. § 102.004(a)(2); *S.M.D.,* 329 S.W.3d at 14.  Without consent from each managing conservator, the grandparents must have the

---

[8]We recognize that the Carrolls are Meghan's parents, not Jason's, but the more likely occurrence would involve a parent joining with his or her own parents in an effort to exclude the child's other parent.

11

consent of both parents or the child's surviving parent. *See* Tex. Fam. Code Ann. § 102.004(a)(2); *S.M.D.*, 329 S.W.3d at 14.

Applying our de novo interpretation of section 102.004(a)(2) to the facts of this case, it is undisputed that Meghan and Jason are the child's parents and joint managing conservators and that both Meghan and Jason are not deceased. It is also undisputed that although Jason has consented to the Carrolls' petition in intervention, Meghan has not consented. As applied to this case, section 102.004(a)(2) requires the consent of both parents or each managing conservator, and the Carrolls have not satisfied section 102.004(a)(2)'s requirements because Meghan has not consented to their intervention. We therefore hold that the trial court abused its discretion by denying Meghan's motion to strike the Carrolls' petition in intervention.

## V. Adequate Appellate Remedy

Having determined that the trial court abused its discretion, we must also determine whether Meghan has an adequate remedy by appeal that would preclude mandamus relief.

Absent extraordinary circumstances, mandamus will not issue unless relator lacks an adequate remedy by appeal. *In re Van Waters & Rogers, Inc.*,145 S.W.3d 203, 210–11 (Tex. 2004) (citing *Walker*, 827 S.W.2d at 839). Whether a clear abuse of discretion can be adequately remedied by appeal depends on a careful analysis of costs and benefits of interlocutory review. *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 464 (Tex. 2008) (orig. proceeding). As

this balance depends heavily on circumstances, it must be guided by analysis of principles rather than simple rules that treat cases as categories. *Id.* An appellate remedy is adequate when any benefits to mandamus review are outweighed by the detriments. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136 (Tex. 2004) (orig. proceeding). When the benefits outweigh the detriments, we must conduct further analysis. *Id.* An appeal is inadequate for mandamus purposes when parties are in danger of permanently losing substantial rights, such as when the appellate court would not be able to cure the error, the party's ability to present a viable claim or defense is vitiated, or the error cannot be made part of the appellate record. *Van Waters & Rogers, Inc.*, 145 S.W.3d at 210–11; *Walker*, 827 S.W.2d at 843–44. An appellate court should also consider whether mandamus will allow the court to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments and whether mandamus will spare litigants and the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings. *In re Team Rocket, L.P.*, 256 S.W.3d 257, 262 (Tex. 2008) (orig. proceeding).

We hold that Meghan does not have an adequate remedy by appeal. Correcting the trial court's abuse of discretion now rather than after trial will save the parties and the public the time and money wasted by trying a case that would probably be reversed on appeal based on the Carrolls' lack of standing. *See id.* at 262. Meghan in particular faces the danger that the Carrolls might be appointed conservators of the child even though they do not have standing to

13

seek conservatorship. *See id.*; *In re D.G.*, 329 S.W.3d 893, 897 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding) (concluding mandamus relief appropriate because relators challenged trial court's jurisdiction in family law proceeding); *In re Smith*, 262 S.W.3d 463, 467 (Tex. App.—Beaumont 2008, orig. proceeding) (granting mandamus relief because party appointed joint managing conservator by temporary order did not have standing).

## VI. Conclusion

Having sustained Meghan's sole issue, we lift our July 15, 2011 stay order and conditionally grant a writ of mandamus directing the trial court (1) to vacate the July 14, 2011 order denying Meghan's motion to strike the Carrolls' petition in intervention and (2) to grant Meghan's motion to strike the Carrolls' petition in intervention. We are confident that the trial court will comply with this opinion within the next thirty days. A writ will issue only if the trial court fails to do so.

ANNE GARDNER
JUSTICE

PANEL: GARDNER, MCCOY, and MEIER, JJ.

MEIER, J., filed a dissenting opinion.

DELIVERED: December 9, 2011

14



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00253-CV

IN RE MEGHAN LEWIS                                                    RELATOR

----------

## ORIGINAL PROCEEDING

----------

## **DISSENTING OPINION**

----------

This court has previously held that a grandparent has standing to seek appointment as a child's managing conservator under "the managing conservator" provision of family code section 102.004(a)(2) when only one managing conservator consents to the grandparent's suit, even if there is more than one managing conservator. Because the majority departs from this precedent and relies on inapposite authority, I respectfully dissent.

Family code section 102.004(a)(2) provides that "a grandparent . . . may file an original suit requesting managing conservatorship if there is satisfactory proof to the court that . . . (2) both parents, the surviving parent, or the managing conservator or custodian either filed the petition or consented to the suit." Tex. Fam. Code Ann. § 102.004(a)(2) (West 2008). Only "the managing conservator" provision is relevant in this original proceeding. Caselaw addressing the "both parents" provision of section 102.004(a)(2) is irrelevant.

In *In re J.W.L.*, although we held that the relator's attempted collateral attack on an agreed order failed because he could not show that the order was void on its face, this court went on to address the relator's specific complaints that the grandparents lacked standing to bring or maintain suit. 291 S.W.3d 79, 84–86 (Tex. App.—Fort Worth 2009, orig. proceeding [mand. denied]). We cited family code section 102.004(a)(2) and reasoned that the grandparents had standing to file the modification suit under that section because "mother, *one of the managing conservators*, had already consented to her parents' custodianship by filing the modification suit with her parents before her death." *Id.* at 85–86 (emphasis added). Thus, this court unambiguously concluded that the grandparents had standing to seek appointment as managing conservators under "the managing conservator" provision of section 102.004(a)(2) when only one of two managing conservators consented to the grandparents' suit. *Id.*

Approximately a year later, in *In re Russell*, this court once again addressed a relator's argument that the grandparents lacked standing to seek

2

possession of a child. 321 S.W.3d 846, 856–58 (Tex. App.—Fort Worth 2010, orig. proceeding [mand. denied]). The grandparents argued that the relator had waived her right to complain about standing because of her signature on an associate judge's report and because of her attorney's agreement as to the form of a temporary order. *Id.* at 857. We disagreed with the grandparents' argument and cited *J.W.L.*, reasoning that this case was "distinguishable from [*J.W.L.*], in which the mother joined, and thus consented to, the grandparents' suit for managing conservatorship." *Id.* n.10. Thus, this court relied on *J.W.L.* to support its conclusion that the relator had not waived her standing argument because, unlike in *J.W.L.*, the relator—alone—had not consented to the grandparents' suit.

Instead of adhering to this court's precedent, the majority chooses to rely on *In re S.M.D.*, a case out of a different court of appeals. 329 S.W.3d 8 (Tex. App.—San Antonio 2010, pet. dism'd). In that case, the court sustained the relator's argument that the child's grandparent did not have standing under family code section 102.004(a)(2) to seek managing conservatorship. *Id.* at 12–14. The court reasoned in relevant part as follows:

> [E]ven if Nonnie effectively consented to the petition in intervention, standing under section 102.004(a)(2) requires the consent or joinder in the petition *of both* parents. It is undisputed that Ed neither joined the petition in intervention nor consented to it. *See* Tex. Fam. Code Ann. § 102.004(a)(2) (requiring that both parents either file the petition or consent to the suit)[.]

*Id.* at 14. One thing is apparent from the court's analysis: it relied on the "both parents" provision of section 102.004(a)(2) to support its holding that the

3

grandparent lacked standing.[1]  There is nothing in the court's analysis to indicate that it based its holding on "the managing conservator" provision of section 102.004(a)(2), which is the specific provision at issue here.  Consequently, *S.M.D.* is entirely inapposite to this original proceeding, and the majority errs by relying on it.[2]

Even if the majority opinion's position that this court's pronouncements in *J.W.L.* and *Russell* are merely dicta and not controlling precedent is correct, proper statutory construction leads to the interpretation that the words "the managing conservator" should not be interpreted as meaning more than one "managing conservator."

In *Entergy Gulf States, Inc. v. Summers*, the supreme court succinctly stated the proper procedure for statutory interpretation:

> The meaning of a statute is a legal question, which we review *de novo* to ascertain and give effect to the Legislature's intent. *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 683 (Tex. 2007).  Where text is clear, text is determinative of that intent.

---

[1]The court italicized the term "both" in its analysis and additionally used the terms "both parents" in its parenthetical to the citation of section 102.004(a)(2). *S.M.D.*, 329 S.W.3d at 14.  Moreover, one of the cases that *S.M.D.* cited as support appeared to rely on only the "both parents" provision of section 102.004(a)(2).  *See In re Cervantes*, 300 S.W.3d 865, 875 (Tex. App.—Waco 2009, orig. proceeding) (op. on reh'g)) (quoting "both parents").  The other cited case addressed the constitutionality of section 102.004(a)(2) and the issue of standing but on a different basis.  *See In re A.M.S.*, 277 S.W.3d 92, 96–99 (Tex. App.—Texarkana 2009, no pet.).

[2]To the extent that the *S.M.D.* court's analysis is ambiguous as to whether it relied on either the "both parents" provision or "the managing conservator" provision of section 102.004(a)(2), the opinion is equally inapposite.

4

> *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006) ("[W]hen possible, we discern [legislative intent] from the plain meaning of the words chosen."); *see also Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 651–52 (Tex. 2006). This general rule applies unless enforcing the plain language of the statute as written would produce absurd results. *Fleming Foods of Tex., Inc. v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999). Therefore, our practice when construing a statute is to recognize that "the words [the Legislature] chooses should be the surest guide to legislative intent." *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 866 (Tex. 1999). Only when those words are ambiguous do we "resort to rules of construction or extrinsic aids." *In re Estate of Nash*, 220 S.W.3d 914, 917 (Tex. 2007).

282 S.W.3d 433, 437 (Tex. 2009). Justice Green repeated:

> Enforcing the law as written is a court's safest refuge in matters of statutory construction, *and we should always refrain from rewriting text that lawmakers chose* . . . .

*Id.* at 443 (emphasis added). If the Legislature had intended the phrase "the managing conservator" to include more than one person, it could have said "all managing conservators" or "both managing conservators"; those words were not used.

I would hold that because Jason consented to the intervention, the trial court did not clearly abuse its discretion by denying Meghan's motion to strike the Carrolls' plea in intervention. Because, in my interpretation of *J.W.L.* and *Russell*, the majority disregards this court's precedent and relies on inapposite authority to hold otherwise, I respectfully dissent.

BILL MEIER
JUSTICE

DELIVERED: December 9, 2011

5