

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-07-397-CV

IN RE ROXSANE R.

------------

FROM THE 231ST DISTRICT COURT OF TARRANT COUNTY

------------

### OPINION

------------

This is an original proceeding in which relator Roxsane R., J.R.'s mother, contends that this court should compel the trial court to dismiss the pending plea in intervention filed by real parties in interest Jennifer and Gary S., former foster parents of J.R., in which they seek to be named managing conservators of J.R. We conditionally grant the writ.[1]

---

[1] Our disposition of this case in favor of relator renders our previous granting of an extension to file a supplemental record on behalf of relator moot.

**Background**

On October 30, 2003, the Texas Department of Family and Protective

Services (TDFPS)[2] filed an original petition for emergency removal of four-

month-old J.R. in the 170th District Court of McLennan County, seeking

permanent managing conservatorship. J.R. was with his mother Roxsane in

Wisconsin at the time and was removed there. J.R. was placed with the

foster parents around this time. TDFPS amended its petition on November

9, 2004, adding a paragraph seeking termination of the parent-child

relationship.

Roxsane filed a motion to dismiss on April 11, 2005, in which she

alleged that the trial court should dismiss the case if a final order was not

entered by the statutory dismissal date, April 28, 2005.[3] The trial court held

---

[2] At the time of initial filing, the agency was known as the Texas
Department of Protective and Regulatory Services, but its name was
changed during the pendency of the suit.

[3] At the time of the termination suit, family code section 263.401
provided as follows, in pertinent part:

> (a)    Unless the court has rendered a final order or granted
> an extension under Subsection (b), on the first Monday after the
> first anniversary of the date the court rendered a temporary order
> appointing the department as temporary managing conservator,
> the court shall dismiss the suit affecting the parent-child
> relationship filed by the department that requests termination of
> the parent-child relationship or requests that the department be
> named conservator of the child.

a jury trial the next day, April 12, 2005. The trial court's charge to the jury

submitted only the termination ground, not the ground seeking to have

---

   (b) The court may retain the suit on the court's docket for a period not to exceed 180 days after the time described by Subsection (a), if the court finds that continuing the appointment of the department as temporary managing conservator is in the best interest of the child. If the court retains the suit on the court's docket, the court shall render an order in which the court:

     (1) schedules the new date for dismissal of the suit not later than the 180th day after the time described by Subsection (a);
     (2) makes further temporary orders for the safety and welfare of the child as necessary to avoid further delay in resolving the suit; and
     (3) sets a final hearing on a date that allows the court to render a final order before the required date for dismissal of the suit under this subsection.

   (c) If the court grants an extension but does not render a final order or dismiss the suit on or before the required date for dismissal under Subsection (b), the court shall dismiss the suit. The court may not grant an additional extension that extends the suit beyond the required date for dismissal under Subsection (b).

Act of May 22, 2001, 77th Leg., R.S., ch. 1090, § 8, 2001 Tex. Gen. Laws 2395, 2396 (amended 2005 & 2007), and Act of May 28, 1997, 75th Leg., R.S., ch. 600, § 17, 1997 Tex. Gen. Laws 2108, 2113 (current version at Tex. Fam. Code Ann. § 263.401 (Vernon Supp. 2007)).

  Section 263.401was amended in this past legislative session to provide that the requirement to enter a final order or dismiss the suit does not apply once trial on the merits has commenced; however, that amendment does not apply to this case because it was commenced before the effective date of the amendment. *See* Act of May 27, 2007, 80th Leg., R.S., ch. 866, § 6, 2007 Tex. Gen. Laws 1837, 1838.

TDFPS named permanent managing conservator.[4]  The jury found that Roxsane's parental rights should not be terminated.

Nothing in the record shows that Roxsane ever moved for a judgment on the verdict.  On April 19, 2005, *after the jury trial* but before the trial court had rendered judgment on the verdict, the foster parents filed a plea in intervention, alleging standing under family code section 102.003(12), which allows foster parents who have had a child placed in their home "for at least 12 months ending not more than 90 days preceding the date of the filing of the petition" to file an original suit affecting the parent-child relationship (SAPCR).  TEX. FAM. CODE ANN. § 102.003(12) (Vernon Supp. 2007).  Their petition alleged that it was in J.R.'s best interest that TDFPS continue to be managing conservator under family code section 263.401(d)[5] or 263.403,[6]

---

[4] However, the jury charge specifically stated that "[i]f no termination of the parent-child relationship is ordered, the court may modify [Roxsane's] rights and duties by court order."

[5] Former section 263.401(d), which was applicable in April 2005, described a final order as one that

(1)    requires that a child be returned to the child's parent;
(2)    names a relative of the child or another person as the child's managing conservator;
(3)    without terminating the parent-child relationship, appoints the department as the managing conservator of the child; or
(4)    terminates the parent-child relationship and appoints a relative of the child, another suitable person, or the department as managing conservator of the child.

Act of May 28, 1997, 75th Leg., R.S., ch. 600, § 17, 1997 Tex. Gen. Laws 2108, 2113 (repealed 2007).

[6] The version of section 263.403 that was applicable in April 2005 read as follows:

(a) Notwithstanding Section 263.401, the court may retain jurisdiction and not dismiss the suit or render a final order as required by that section if the court renders a temporary order that:

(1) finds that retaining jurisdiction under this section is in the best interest of the child;

(2) orders the department to return the child to the child's parent;

(3) orders the department to continue to serve as temporary managing conservator of the child; and

(4) orders the department to monitor the child's placement to ensure that the child is in a safe environment.

(b) If the court renders an order under this section, the court shall:

(1) include in the order specific findings regarding the grounds for the order; and

(2) schedule a new date, not later than the 180th day after the date the temporary order is rendered, for dismissal of the suit.

(c) If a child placed with a parent under this section must be moved from that home by the department before the dismissal of the suit or the rendering of a final order, the court shall, at the time of the move, schedule a new date for dismissal of the suit. The new dismissal date may not be later than the original dismissal date established under Section 263.401 or the 180th day after the date the child is moved under this subsection, whichever date is later.

(d) If the court renders an order under this section, the

or inthe alternative, that the trial court appoint the foster parents as J.R.'s managing conservators.

Although there is no written objection to the plea in intervention in the mandamus record, Roxsane must have objected to the foster parents' standing to intervene because the trial court ruled on the standing issue in a hearing on April 26, 2005 as follows:

> [I]t's being raised at this point in time as to whether or not they can participate in this proceeding. The Court will, with some trepidation, rule at this point in time that [the foster parents do] have standing, believing that intervention and standing to file an original suit are essentially the same in regard to this matter.

At the hearing, the trial court also determined that the evidence warranted the issuance of a monitored return order under section 263.403[7] of the family code.

On April 28, 2005—the section 263.401 enter-a-final-order-or-dismiss date—the trial court entered a monitored return order under section 263.403, finding that TDFPS should continue to serve as temporary managing conservator but that J.R. should be returned to Roxsane under the

---

court must include in the order specific findings regarding the grounds for the order.

Act of May 22, 2001, 77th Leg., R.S., ch. 1090, § 9, 2001 Tex. Gen. Laws 2395, 2397 (amended 2007) (current version at TEX. FAM. CODE ANN. § 263.403 (Vernon Supp. 2007)).

[7] *See* note 6 *supra*.

supervision of TDFPS.  The trial court set a new mandatory dismissal date of not more than 180 days from the date of its monitored return order, October 25, 2005, as required by the statute.  *See id*. § 263.403(b)(2).  TDFPS was to remain temporary managing conservator during this transition.

The monitored return order did not acknowledge or specifically encompass the jury's verdict that Roxsane's parental rights should not be terminated but states that "the Court finds that placing [J.R.] in the home of [Roxsane] while retaining jurisdiction is in the best interest of the child to establish a safe transition of the child who has been out of [Roxsane's] home for approximately 18 months."  The court ordered TDFPS to monitor the placement of J.R. in Roxsane's home and to remove him "if circumstances indicate that the home is no longer a safe environment."  During this six month period, TDFPS was to provide unlimited counseling for Roxsane and counseling and play therapy for J.R. as appropriate.  The trial court also ordered the foster parents to assist with the transition into Roxsane's home and ordered interim visitation between J.R. and the foster parents as agreed to or proposed by the parties.[8]

---

[8] There is no additional temporary order or agreed temporary order in the record designating any specified period of possession to [the] foster parents during the monitored return, however.

On May 31, 2005, the trial court[9] transferred the case to Tarrant County, where Roxsane was residing. The transfer order states that J.R. "is to be returned to the home of [Roxsane] on May 31, 2005" but that the provisions of the monitored return order were to remain in effect until the end of the six month period. Upon transfer to Tarrant County, the case was assigned to the 322nd District Court.

On October 21, 2005, four days before the suit was to be dismissed in accordance with section 263.401, the 322nd District Court, the Honorable Frank Sullivan presiding, held a hearing on several issues in the case. The court signed an order granting TDFPS's motion for nonsuit of its "Movant's Petition Seeking Termination of the Parent-Child Relationship in this cause" and removing TDFPS as J.R.'s temporary managing conservator. The order did not designate a conservator for J.R., temporary or otherwise. The court also appointed an amicus attorney for J.R.

That same day, Roxsane filed a pro se "Mother's Objection to Conservators and Amicus Attorney." In it, she stated that she objected to the foster parents being appointed conservators of J.R. and to the appointment of an amicus attorney for J.R. Specifically, Roxsane objected

---

[9] Although the case had been pending in the 170th District Court of McLennan County, the caption of the transfer order shows that it was an order from the 74th District Court of McLennan County.

to having to share in the expense of an amicus attorney.  Roxsane also requested that the case be dismissed and that she would "like to be re-united with [her] son permanently as soon as possible without a conservator."  Further, Roxsane stated that the foster parents had not had any contact with J.R. for five of the six months since the monitored return order was signed.

On January 13, 2006, Judge Sullivan signed an order noting that a hearing had been held on October 21, 2005, that the trial court granted a nonsuit to TDFPS, and that "a separate order was signed."  Judge Sullivan ordered that J.R. would remain in Roxsane's custody until "a hearing could be had on temporary orders."  His order also states that "[t]he Court finds that, on the issue of standing of [the foster parents], the 74th Judicial District Court of McLennan County has already ruled that [the foster parents] have standing in this matter."  Judge Sullivan did not enter a final order in the case as required by former section 263.403(b)(2) governing dismissal upon the expiration of a monitored return order.

Next, the trial court's associate judge entered temporary orders sometime before January 23, 2006,[10] which Roxsane appealed to Judge Sullivan.  On February 2, 2006, Judge Sullivan signed an order indicating

---

[10] These orders are not in the record.

that he had heard Roxsane's "Appeal of Temporary Orders" affirming the temporary orders with the following changes:  (1) Roxsane was ordered to give the amicus attorney access to J.R.;  (2) Roxsane was ordered to give the foster parents possession of J.R. on the first and third weekends of each month from 6:00 p.m. on Friday to 6:00 p.m. on Sunday; and (3) Roxsane was enjoined from changing her residence from Tarrant County during pendency of the suit.  Again, the judge did not designate a conservator for J.R.[11]

On May 11, 2006, Roxsane filed a "Plea to the Jurisdiction/Motion to Strike Plea in Intervention/Motion to Dismiss" (motion to dismiss) asking the trial court to dismiss the suit under family code section 263.401 because the trial court had not entered a "final order" by the October 25, 2005 statutory dismissal date.  Roxsane argued that the intervention was untimely, that the foster parents had no standing to intervene in the suit, and that the 322nd District Court failed to follow the 74th District Court's order setting the final dismissal date as October 25, 2005.  Roxsane also argued that the plea in intervention should be stricken because it complicates the case with excessive multiplication of issues, it is not necessary to protect the interests

---

[11] Section 151.001 of the family code sets forth the rights and duties of a parent in the absence of an order establishing conservatorship. TEX. FAM. CODE ANN. § 151.001 (Vernon Supp. 2007).

of the foster parents, it places an undue burden on Roxsane, both financially and mentally, and the temporary visitation is a source of confusion for J.R. Judge Sullivan denied the motion on July 7, 2006 by written order.

On August 9, 2006, the foster parents filed a first amended petition seeking sole managing conservatorship of J.R. Roxsane responded on August 22, 2006, again challenging the standing of the foster parents. On January 1, 2007, the Honorable Nancy Berger was sworn in as presiding judge of the 322nd District Court; she voluntarily recused herself from the case. The case was then transferred to the 231st District Court of Tarrant County.

Roxsane and the foster parents each filed motions to modify the February 2, 2006 temporary orders in May 2007. The only subsequent order in the record is dated June 6, 2007, in which the associate judge of the 231st District Court ordered the preparation of a social study at the expense of the foster parents. However, the associate judge's report, dated the same day, states that the temporary orders restricting J.R.'s residence to Tarrant County are modified to allow his residence to be in Tarrant or contiguous counties. The associate judge also withheld ruling on several other issues raised by the parties in their motions to modify the temporary orders.

Roxsane filed a notice of removal to federal court on June 15, 2007, but the federal court remanded the case to the 231st District Court on October 9, 2007. Roxsane filed this petition for writ of mandamus on November 14, 2007, contending that this court should order the trial court to dismiss the underlying suit "in accordance with the jury's original verdict rendered on April 12, 2005, [or] in the alternative, strike the plea in intervention" by the foster parents. Because the presiding judge of the 231st District Court, the Honorable Randy Catterton, had not ruled on any of the issues raised in the petition, we abated the case to provide Judge Catterton with an opportunity to rule on Roxsane's motion to dismiss. *See State v. Olsen*, 163 Tex. 449, 360 S.W.2d 402, 403 (1962) (orig. proceeding); *In re Whitfield*, 134 S.W.3d 314, 315 (Tex. App.—Waco 2003, order); *see also* TEX. R. APP. P. 7.2(b). After a nonevidentiary hearing, Judge Catterton denied the motion. We reinstated the case on February 22, 2008, upon Roxsane's filing of a supplemental record containing the trial court's order denying the motion.

## Laches

Before we address Roxsane's issues, we must address the argument of the foster parents that Roxsane's claims are barred by the doctrine of laches. According to the foster parents, there is no justification for

Roxsane's delay in seeking mandamus relief from this court when some of her complaints relate to the trial court's actions (and alleged inaction) two and one-half years before she filed her petition.

Although mandamus is not an equitable remedy, its issuance is largely controlled by equitable principles. *In re Users Sys. Servs., Inc*., 22 S.W.3d 331, 337 (Tex. 1999) (orig. proceeding); *Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366, 367 (Tex. 1993) (orig. proceeding); *In re Hinterlong*, 109 S.W.3d 611, 620 (Tex. App.—Fort Worth 2003, orig. proceeding). One of these equitable principles is that equity aids the diligent and not those who slumber on their rights. *Rivercenter Assocs.*, 858 S.W.2d at 367; *In re Hinterlong*, 109 S.W.3d at 620. Thus, mandamus relief may be denied when a party inexplicably delays asserting its rights. *See, e.g*., *Rivercenter Assocs.*, 858 S.W.2d at 367; *In re Hinterlong*, 109 S.W.3d at 620.

In determining if Roxsane's delay in seeking a writ of mandamus bars issuance of a writ, a court may analogize to the doctrine of laches, which bars equitable relief. *In re Hinterlong*, 109 S.W.3d at 620. A party asserting the defense of laches must show both an unreasonable delay by the other party in asserting its rights and harm resulting to it because of the delay. *Rogers v. Ricane Enters. Inc.*, 772 S.W.2d 76, 80 (Tex. 1989); *In re Hinterlong*, 109 S.W.3d at 620.

Although the record shows periods of delay by Roxsane in seeking relief as to the petition in intervention, overall, the record also shows a pattern by Roxsane of trying to seek relief from each of the trial courts involved. In addition, the record also shows that Roxsane was represented by different attorneys and was, at one point, pro se when she sought relief from the trial courts. Specifically, Mary Beth Scott represented Roxsane at the termination trial and after trial when the foster parents filed the petition in intervention, presumably when Roxsane raised her first objection as to standing. After the McLennan County courts entered the monitored return order and transfer order to Tarrant County, Roxsane had no need to object because J.R. was returned to her by court order and the foster parents had no contact with him for at least five months, from May 31, 2005 to October 21, 2005. It was only when TDFPS nonsuited its claims, yet the foster parents remained in the suit, that Roxsane had a reason to again raise the issue of the propriety of proceedings continuing as to their petition in intervention. And Roxsane did object at that time, seeking relief from the 322nd District Court. She was pro se at the time; there is no evidence as to how long it took for her to find and hire a new attorney.[12] Her motion to dismiss was filed by Yusuf Abdullah, who represented her until at least

---

[12] Roxsane was still pro se when the 322nd District Court entered its February 2, 2006 order affirming the associate judge's temporary orders.

August 2006. The mandamus record does not show when Roxsane hired her current attorney, Judith Grantham, but the first document filed by Grantham in the mandamus record is a motion to modify temporary orders filed on May 31, 2007.

We conclude and hold that the record shows that Roxsane did not unreasonably delay in seeking relief as to the propriety of the petition in intervention. Thus, we will review and consider the merits of Roxsane's complaints in this mandamus proceeding.

**Should Trial Court Have Dismissed Plea in Intervention?**

In her petition for writ of mandamus and in her motion to dismiss filed in the trial court, Roxsane challenges the timeliness and propriety of the foster parents' plea in intervention. She contends that the trial court should have stricken the plea in intervention when it was filed. She also contends that even if the plea in intervention was timely and the 170th District Court in McClennan County had discretion not to strike it, the 322nd District Court in Tarrant County, to which the case was transferred, nevertheless should have dismissed the foster parents from the suit and rendered a final order in her favor upon TDFPS's nonsuit of its claims. Implicit in her arguments is the contention that the scope of the plea in intervention was limited to the issues in TDFPS's termination suit. That is, when TDFPS nonsuited its

claims, there were no remaining claims for affirmative relief by the foster parents that would have justified them remaining in the suit; the termination suit had already been tried to a jury. We agree with Roxsane's latter contention. Furthermore, because it is dispositive, we need not address her claims as to the initial timeliness and propriety of the intervention. *See* TEX. R. APP. P. 47.1; *Horsley-Layman v. Adventist Health Sys./Sunbelt, Inc.*, 221 S.W.3d 802, 809 (Tex. App.—Fort Worth 2007, pet. denied).

**Applicable Law**

"Any party may intervene by filing a pleading, subject to being stricken out by the court for sufficient cause on the motion of any party." TEX. R. CIV. P. 60. Upon filing of a timely petition in intervention, an intervenor becomes a party to the suit for all purposes. *In re D.D.M.*, 116 S.W.3d 224, 231 (Tex. App.—Tyler 2003, no pet.); *Brook v. Brook*, 865 S.W.2d 166, 172 (Tex. App.—Corpus Christi 1993), *aff'd*, 881 S.W.2d 297 (Tex. 1994). If a party nonsuits its claims or its claims are dismissed, a remaining party's right to be heard on any of its pending claims for affirmative relief is not prejudiced, and the trial court retains jurisdiction over the remaining claims. TEX. R. CIV. P. 162; *Univ. of Tex. Med. Branch at Galveston v. Estate of Blackmon ex rel. Shultz*, 195 S.W.3d 98, 100–01 (Tex. 2006); *Yaquinto v. Britt*, 188 S.W.3d 819, 824 (Tex. App.—Fort Worth 2006, pet. denied); *In*

*re D.D.M.*, 116 S.W.3d at 232.

A claim for affirmative relief is a pleading that states facts showing a cause of action independent of the plaintiff's claim on which the claimant could obtain relief even if the plaintiff abandons or is unable to establish its cause of action. *Univ. of Tex. Med. Branch*, 195 S.W.3d at 101; *In re D.D.M.*, 116 S.W.3d at 232. Whether a pleading is an affirmative claim for relief is determined by the facts alleged and not by the name given the plea or by the form of the prayer for relief. *In re D.D.M.*, 116 S.W.3d at 232; *Baca v. Hoover, Bax & Shearer*, 823 S.W.2d 734, 737 (Tex. App.—Houston [14th Dist.] 1992, writ denied).

**Analysis**

Here, the foster parents' plea in intervention stated as follows:

> It is in the best interests of the child that the Court *continue* the appointment of [TDFPS] as Managing Conservator pursuant to Section 263.401(d) or 263.403 of the Texas Family Code. Failing that, it is in the best interest of the child to appoint intervenors managing conservators of the child, and to make such other and further orders as are necessary to ensure that the child is in a safe environment.

> WHEREFORE, intervenors request that the parties take notice of the filing of this plea in intervention, and that, on hearing the Court appoint intervenors managing conservators of the child or, in the alternative, order that intervenors have access to the child in accordance with the allegations of this plea, grant intervenors' their costs of suit, including attorney's fees, and make such other and further orders to which intervenors may be justly entitled. [Emphasis added.]

Looking to the facts pled by the foster parents, we conclude that their claims are contingent upon, and not independent of, TDFPS's allegations in its previously tried termination suit.[13] Specifically, they asked that TDFPS be continued as the managing conservator, *either* in a final order under family code section 263.401(d)[14] *or* in a monitored return order under section 263.403; their request to be appointed managing conservators of J.R. is also clearly made in the alternative.[15]

The trial court granted the foster parents the relief they requested in

---

[13] Although the plea in intervention states that the foster parents have standing under section 102.003(a)(12) of the family code—which provides that a foster parent with whom TDFPS has placed a child and who has had possession of that child for at least twelve months ending not more than ninety days preceding the date of the filing of a petition has standing to file an original SAPCR—the facts alleged in the plea show that it was meant to be a plea in intervention rather than an original suit seeking conservatorship of J.R. *See* TEX. FAM. CODE ANN. § 102.003(a)(12) (Vernon Supp. 2007); *In re N.L.G.*, 238 S.W.3d 828, 830-31 (Tex. App.—Fort Worth 2007, no pet.); *In re A.M.*, 60 S.W.3d 166, 169 (Tex. App.—Houston [1st Dist.] 2001, no pet.) ("[I]ntervening and filing the original suit are distinct legal actions.").

[14] Former section 263.401(d) provided that a final order includes one that, "without terminating the parent-child relationship, appoints [TDFPS] as the managing conservator of the child."

[15] Our conclusion is supported by the posture of the case at the time. The foster parents did not intervene until *after* the jury had already determined the merits of TDFPS's termination suit. Thus, they were no longer able to seek an affirmative claim for adoption and, as nonparents, would have had to overcome the statutory presumption in favor of parents to seek any affirmative relief as to J.R. *See* TEX. FAM. CODE ANN. § 153.131 (Vernon 2002).

their plea in intervention when it rendered the monitored return order providing for the transition of J.R. into Roxsane's home.[16] Further, in its order transferring the case to Tarrant County, the 74th District Court required J.R. to be returned to Roxsane without any additional provision for further possession by the foster parents; they did not have any possession of him from that date until at least October 21, 2005 and possibly until the effective date of the 322nd District Court's February 2, 2006 temporary orders giving them limited possession. Thus, the record shows that the McClennan County trial judge intended to fully resolve the alternative claims for relief in the foster parents' plea in intervention by entering the monitored return order, under which the judge intended for J.R. to remain with Roxsane *unless* TDFPS or the foster parents became aware of any circumstances justifying his subsequent removal, the statutory exception to dismissal. The record shows that TDFPS did not remove J.R. from Roxsane's possession from the time he was returned to her possession on May 31, 2005 to the

---

[16] The trial court's comments at the April 26, 2005 hearing clarify the court's intent. After noting that the jury had determined that Roxsane's rights should not be terminated, the court stated that it had not heard anything new or different. While explaining the terms of the monitored return order, the court addressed the foster parents, acknowledging the toll it would probably take on them to return J.R. But the court further stated, "And then we'll just see how this works. If you [Roxsane] can handle this and if [J.R.] can handle it, then obviously he will be in his family." It is clear from the trial court's comments that its intention was to resolve all pending claims by the foster parents.

date of its nonsuit.  Thus, the record shows that upon expiration of the monitored return order, the McClennan County trial judge intended for Roxsane to have sole possession of J.R. if he had not been removed from her before that time for safety concerns.

Because the foster parents' claims for relief had been resolved when TDFPS nonsuited its claims—and they had no pending claims for affirmative relief—the 322nd District Court abused its discretion by failing to dismiss the plea in intervention and enter a final order in Roxsane's favor on October 21, 2005.  We recognize that this case has followed a unique and convoluted procedural history.  However, because the foster parents no longer had standing under section 102.003(a)(12) when they filed their first independent claim for affirmative relief in August 2006, the 231st District Court abused its discretion by refusing to dismiss the plea in intervention while this case was abated.  We sustain Roxsane's challenge to the trial court's failure to dismiss the plea in intervention.

### Adequate Remedy by Appeal

To be entitled to mandamus relief, Roxsane must also show that she has an inadequate remedy by appeal. *In re Sw. Bell Tel. Co.*, 235 S.W.3d 619, 623 (Tex. 2007); *In re Spiritas Ranch Enters., L.L.P.*, 218 S.W.3d 887, 893 (Tex. App.—Fort Worth 2007, orig. proceeding).  There is no final order

in this case; the trial court's order denying the motion to dismiss is interlocutory. *See Wright v. Pino*, 163 S.W.3d 259, 263 (Tex. App.—Fort Worth 2005, no pet.) (holding that a judgment is final when it actually disposes of every claim and party or clearly and unequivocally states that it disposes of all claims and parties). Texas appellate courts have jurisdiction only over final orders or judgments unless a statute permits an interlocutory appeal. *Ogletree v. Matthews*, No. 06-0502, 2007 WL 4216606, at *2 n.1 (Tex. Nov. 30, 2007); *Jain v. Stafford*, 214 S.W.3d 94, 96 (Tex. App.—Fort Worth 2006, pet. dism'd). Here, an appeal of the trial court's order is not authorized by statute. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a) (Vernon Supp. 2007) (listing appealable interlocutory orders); TEX. FAM. CODE ANN. § 105.001(e) (Vernon Supp. 2007) (providing that temporary orders are not subject to interlocutory appeal).

Because the trial court's order is not immediately appealable, we must determine whether an appeal from any final order on the petition in intervention would be adequate. We hold that it would not.

The supreme court has held that determining whether an adequate remedy by appeal exists "demands a 'careful balance of jurisprudential considerations that determine when appellate courts will use original mandamus proceedings to review the actions of lower courts.'" *In re Tex.*

*Dep't of Family and Protective Servs*., 210 S.W.3d 609, 613 (Tex. 2006) (quoting *In re Prudential Ins. Co. of Am*., 148 S.W.3d 124, 135-36 (Tex. 2004)).  It has also held that justice demands a speedy resolution in cases involving child custody and that appeal is frequently inadequate to protect the rights of parents and children.  *Id*.

Here, Roxsane has been forced to defend against and participate in the costs of a suit alleging previously litigated issues involving custody and conservatorship of her child that should have been dismissed no later than October 21, 2005.  The foster parents would not have had standing to file an original suit in October 2005 since they had not had any contact with J.R. for five months.  Currently, Roxsane is having to participate in a social study, and the foster parents are maintaining contact with J.R. that they would not otherwise have had.  There is no evidence that J.R.'s circumstances have changed in a way that would warrant removal or the institution of a new suit.  No trial date is set, so it is unclear how much longer Roxsane will have to participate in and defend against this suit.  We conclude and hold that any remedy available by appeal would be inadequate to protect Roxsane's interest in J.R.

Because we have determined that Roxsane is entitled to relief, i.e., the dismissal of the foster parents' plea in intervention, we conditionally grant

the writ of mandamus and order the trial court to enter an order dismissing the foster parents' plea in intervention.[17]  A writ will issue only if the trial court fails to comply with this order.

TERRIE LIVINGSTON
JUSTICE

PANEL B:   LIVINGSTON, WALKER, and MCCOY, JJ.

DELIVERED: March 28, 2008

---

[17] Our holding should not be construed as preventing the trial court from entering any temporary orders that may be otherwise permissible by law or that may be agreed to by the parties providing for gradually decreased possession by the foster parents as the trial court may find to be in J.R.'s best interest.  *See, e.g.*, TEX. FAM. CODE ANN. §§ 109.001, 153.001–.002 (Vernon 2002).