# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-19-00208-CV

### In re April Caudillo

---

### ORIGINAL PROCEEDING FROM WILLIAMSON COUNTY

---

### M E M O R A N D U M   O P I N I O N

This original proceeding arises out of a suit affecting the parent-child relationship (SAPCR) in which a child's paternal grandfather and uncle, real parties in interest Michael Miller ("Grandfather") and Jarid Miller ("Uncle"), filed a petition to modify the parent-child relationship after the child's father died. The child's mother, relator April Caudillo ("Mother"), moved to dismiss the modification suit on the ground that Grandfather and Uncle lack the requisite statutory standing to maintain their suit. After the trial court denied her motion, Mother filed a petition for writ of mandamus in this Court. *See* Tex. Gov't Code § 22.221; Tex. R. App. P. 52.1(a). Because we conclude, based on the record before us, that the trial court's decision does not constitute an abuse of discretion, we deny the petition. *See* Tex. R. App. P. 52.8(a).

### BACKGROUND

The child's father, Kristopher Miller ("Father"), died unexpectedly in a car accident on October 29, 2018. At the time of Father's death, the child's relationship with Mother and Father was governed by a June 2016 Final Order in Suit Affecting Parent-Child Relationship. Grandfather and Uncle were not parties to the 2016 Final Order. Under the 2016 Final Order,

Father had been appointed the sole permanent managing conservator and, accordingly, had the right to designate the child's primary residence. *See* Tex. Fam. Code § 153.132 (rights and duties of parent appointed sole managing conservator). Mother had been appointed possessory conservator of the child with rights of possession and access to the child. At the time of Father's death, he and the child were living in Texas; Mother was living in California.

On October 31, 2018, two days after Father's death, Grandfather and Uncle filed a petition to modify the 2016 Final Order. In their petition, Grandfather and Uncle allege that Father's death constitutes a material and substantial change in circumstances that necessitates modification, that the child's "current circumstances under the current order would significantly impair the child's physical and emotional well-being," and that their appointment as nonparent joint managing conservators is in the child's best interest. In response, Mother filed an answer generally denying Grandfather and Uncle's claims. Soon after, Mother filed a first amended answer and, in the same document, a "motion to strike" (hereafter, the "motion to dismiss") requesting that the trial court strike Grandfather and Uncle's pleadings and dismiss their claims based on lack of standing. In addition, Mother counter-petitioned to modify the 2016 Final Order and to be appointed as the child's sole managing conservator.

In February 2019, the trial court held a temporary-orders hearing. At the hearing, the trial court heard evidence from the parties about the events leading to the 2016 Final Order, as well as evidence about Mother's current relationship with the child. According to Mother's testimony, she and Father were high-school sweethearts. They met in high school in Arizona when she was a sophomore and he was a junior. Both Mother and Grandfather testified that Mother was always at Father's family's house and was like part of the family. Father's family moved to Texas before Mother graduated from high school, and in 2011, when she was 17,

2

Mother moved to Texas to be with Father. The child was born on October 30, 2013, and was five years old at the time of the hearing.

In March 2015, Mother and Father were moving from Texas to Arizona when they were involved in a serious car accident in Midland-Odessa. It is unclear from the record whether the child was with them at the time of the accident. Mother testified that she was hospitalized as a result of her injuries, including a stay in the intensive-care unit, and then released to the care of her parents in Arizona. Mother's father drove her to Arizona so that her mother could care for her while she was recovering. Father sustained only minor injuries, and following the accident, he stayed in Texas with the child, who was about 17 months old at the time.

Mother testified that the reason that she and Father were moving to Arizona was because they wanted to "get clean and off drugs." According to Mother's testimony at the hearing, her family in Arizona was "clean and sober," while Father's family in Texas was not, "so that was a better option for [them] at the time." Mother further testified that she and Father had used drugs, including marijuana and methamphetamine, when they were living with Father's family and had used marijuana and methamphetamine with Father's parents. Grandfather admitted that they "had smoked marijuana together" but testified that there were no other drugs in the house to his knowledge.

Mother testified that while she was recovering from the accident in Arizona, Father called to let her know that Child Protective Services (CPS) had initiated a case in Texas based on a referral from Mother's father to CPS in Texas. Although the parties dispute the details of events that occurred during the pendency of the CPS case, it is undisputed that Father completed the court-ordered services. Mother testified that she contacted CPS in Arizona but

3

that they were unable to help her obtain the services ordered by the Texas court. Mother did not appear at the final hearing in that case, and she was not at the mediation at which CPS and Father reached an agreement on the terms of the agreed final order that was submitted to the trial court. The CPS case ultimately resulted in the 2016 Final Order that governed Mother's and Father's relationship to the child at the time of Father's death.

Mother testified that while the CPS case was still pending, she got pregnant with another child, that she started using heroin after that child's birth, and that she ultimately agreed to allow her father to adopt that child. She testified that after living with her mother and working with her mother in her mother's real-estate business as well as working as a delivery driver, she moved to California and successfully completed a drug-rehabilitation program. According to her testimony at the hearing, Mother moved to California because she has more family there, including her father and her aunt, who support her in her efforts to quit using drugs and to "stay clean." After she completed the drug-rehabilitation program in June 2017, she moved in with her aunt and helps her aunt around the house, takes her to doctors' appointments, and spends time with her. Mother also works about 30 hours a week as a pizza-delivery driver.

The parties testified to conflicting versions of Mother's efforts to contact Father and the child between the issuance of the June 2016 Final Order and July 2018 when she visited Texas for the first time after the Order was signed. Both sides agreed that there was intermittent communication between Mother and Father before Mother first visited the child in July 2018, but they disputed the reasons that their communication was sporadic. However, it is undisputed that Mother's first visit with the child, who by then was four-and-a-half years old, occurred on a weekend in mid-July 2018.

4

The parties also argued the issue of Grandfather and Uncle's standing at the hearing. The trial court later notified the parties by letter that it was denying Mother's motion to dismiss and, instead, issuing temporary orders naming Grandfather and Uncle joint managing conservators of the child, leaving Mother's status as possessory conservator unchanged, and establishing a step-up possession and access schedule governing Mother's visitation. In this mandamus proceeding, Mother challenges the trial court's ruling on her motion to dismiss.

**PRINCIPLES GOVERNING MANDAMUS RELIEF**

A writ of mandamus will issue to correct a clear abuse of a trial court's discretion when the party has no adequate remedy by appeal. *In re Southwestern Bell Tel. Co.*, 226 S.W.3d 400, 403 (Tex. 2007) (orig. proceeding) (citing *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004) (orig. proceeding)). Mandamus is an appropriate vehicle for challenging a trial court's denial of a motion to dismiss for lack of standing in a SAPCR because the order is not immediately appealable. *In re McDaniel*, 408 S.W.3d 389, 396 (Tex. App.—Houston [1st Dist.] 2011, orig. proceeding) (citing *In re Roxsane R.*, 249 S.W.3d 764, 775 (Tex. App.—Fort Worth 2008, orig. proceeding)); *see also In re Martin*, 523 S.W.3d 165, 169 (Tex. App.—Dallas 2017, orig. proceeding) ("Due to the unique and compelling circumstances presented in a SAPCR action, . . . mandamus relief is . . . an appropriate remedy for an order denying a motion to dismiss for lack of standing in a SAPCR action."). Therefore, whether Mother is entitled to mandamus relief turns on whether the trial court abused its discretion by refusing to dismiss Grandfather and Uncle's petition to modify for lack of standing.

A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it fails to correctly analyze

5

or apply the law. *In re Cerberus Cap. Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005). In determining whether the trial court abused its discretion with respect to its resolution of factual issues, we may not substitute our judgment for that of the trial court and may not disturb the trial court's decision unless it is shown to be arbitrary and unreasonable. *In re Sanders*, 153 S.W.3d 54, 56 (Tex. 2004). Thus, we cannot set aside the trial court's finding unless it is clear from the record that the trial court could have reached only one decision. *In re Nitla S.A. de C.V.*, 92 S.W.3d 419, 422 (Tex. 2002). On the other hand, our review of the trial court's legal determinations is much less deferential. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992). A trial court has no discretion in determining what the law is or in applying the law to the particular facts. *See In re Department of Fam. & Protective Servs.*, 273 S.W.3d 637, 643 (Tex. 2009).

## DISCUSSION

A party seeking conservatorship of a child must have standing to seek such relief. *In re S.M.D.*, 329 S.W.3d 8, 12-13 (Tex. App.—San Antonio, pet. dism'd). In the context of a SAPCR, "standing is governed by the Texas Family Code" and "[t]he party seeking relief must allege and establish standing within the parameters of the language used in the statute." *Id.* (quoting *In re H.G.*, 267 S.W.3d 120, 124 (Tex. App.—San Antonio 2008, pet. denied)).

In their petition to modify, Grandfather and Uncle asserted several statutory bases to support their claim of standing to file suit, including Section 102.004(a)(1) of the Family Code. Section 102.004(a)(1) states:

> [A] grandparent, or another relative of the child related within the third degree by consanguinity, may file an original suit requesting managing conservatorship if there is satisfactory proof to the court that . . . the order requested is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development.

6

Tex. Fam. Code § 102.004(a)(1) ('Standing for Grandparent or Other Person"); *see also id.* § 156.002(b) (establishing that "[a] person or entity who, at the time of filing, has standing to sue under Chapter 102 may file a suit for modification in the court with continuing, exclusive jurisdiction"). This provision "is intended to restrict grandparent [and certain other nonparents] standing to bring a SAPCR solely to 'certain extreme circumstances.'" *Medrano v. Zapata*, No. 03-12-00131-CV, 2013 WL 6921500, at *6 (Tex. App.—Austin Dec. 31, 2013, no pet.) (mem. op.) (citations omitted). A grandparent or other nonparent does not satisfy his burden by presenting evidence that shows he "would be a better custodian of the child or that []he has a strong and on-going relationship with the child." *In re S.M.D.*, 329 S.W.3d at 16 (discussing significant-impairment requirement in Section 102.004(b)).

"Satisfactory proof to the court," as used in Section 102.004(a)(1), denotes proof by a preponderance of the evidence. *See, e.g.*, *id.* at 13. "Present circumstances" refers to the circumstances in existence as of the date the suit requesting managing conservatorship is filed. *See Medrano*, 2013 WL 6921500, at *7. In other words, the party seeking conservatorship must show, by a preponderance of the evidence, facts establishing that standing existed at the time suit was filed in the trial court, and if he cannot, the trial court must dismiss the suit. *See e.g.*, *In re S.M.D.*, 329 S.W.3d at 13.

Here, because the trial court did not make any express fact findings in ruling on Mother's motion to dismiss, we will infer that the trial court made all the fact findings necessary to support the legal conclusion that Grandfather and Uncle have standing, including any fact findings that would support a determination of standing under Section 102.004(a)(1). *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). Accordingly, we assume that the trial court made the implied finding that when Grandfather and Uncle filed their petition

7

for modification, appointment of Mother as the child's managing conservator would significantly impair the child's physical health or emotional development.[1] In her petition to this Court, Mother argues Grandfather and Uncle presented no evidence that would support such an implied finding and therefore the trial court abused its discretion to the extent it concluded that they have established standing under Section 102.004(a)(1).

To support a finding that appointment of a parent as sole managing conservator would significantly impair the child, either physically or emotionally, the evidence must do more than merely raise a suspicion or speculation of possible harm. *In re B.B.M.*, 291 S.W.3d 463, 467 (Tex. App.—Dallas 2009, pet. denied) (discussing significant-impairment requirement under analogous provision in Family Code, Section 153.131). Instead, the nonparent must "offer evidence of specific actions or omissions of the parent that demonstrate an award of custody to the parent would result in physical or emotional harm to the child." *Lewelling v. Lewelling*, 796 S.W.2d 164, 167 (Tex. 1990). In other words, the evidence must support a logical inference that the parent's specific, identifiable behavior or conduct will probably result in serious harm to the child's physical or emotional well-being. *Whitworth v. Whitworth*, 222 S.W.3d 616, 623 (Tex. App.—Houston [1st Dist.] 2007, no pet.). Acts or omissions that constitute significant

---

[1] As to "present circumstances" in this case, we note that it is undisputed that Mother, as the child's surviving parent, has a superior right to present possession of the child which she could, absent this suit, enforce by seeking a writ of habeas corpus. *Greene v. Schuble*, 654 S.W.2d 436, 437-38 (Tex. 1983) ("In the absence of specific provisions to the contrary in an order establishing conservatorship, the death of the managing conservator ends the conservatorship order and it no longer constitutes a valid subsisting court order for purposes of [a habeas proceeding]."); *see also* Tex. Fam. Code § 157.376 (recognizing that, if no order exists governing right to possession of child, child shall be returned to parent if right of possession is between parent and nonparent and no SAPCR has been filed). Consequently, the "child's present circumstances" in this case include Mother's right, as the surviving parent, to sole possession of the child.

8

impairment include, but are not limited to, physical abuse, severe neglect, abandonment, drug or alcohol abuse, or immoral behavior by a parent. *In re B.B.M.*, 291 S.W.3d at 469.

Mother's testimony establishes that she and Father began using drugs, including marijuana and methamphetamine, sometime prior to 2015 and that Mother continued to use drugs and have drug-addiction issues until she completed a drug-rehabilitation program in June 2017. Mother testified that she used methamphetamine until she found out she was pregnant with her second child and that she used heroin after her second child was born. By her own admission, Mother's drug use prevented her from being able to care for her second child, and consequently, she voluntarily relinquished her parental rights to that child. Mother explained to the trial court that she came to an agreement with her own father that he would adopt that child because, "I needed to work on myself. I mean I can't take care of a child if I can't take care of myself first." She testified that although she had unsuccessfully tried to quit using drugs before, she has been able to successfully remain sober this time because she is with her family and she has let them help her. Although it is undisputed that at the time of the hearing in this case, Mother was not actively using illegal drugs and that she was working toward rebuilding her life, when Grandfather and Uncle filed their petition for modification, it had been less than 17 months since Mother had completed her drug-rehabilitation program.

Evidence of past misconduct, standing alone, may not be sufficient to show present unfitness of a parent. *See In re Mitchell*, 585 S.W.3d 38, 48 (Tex. App.—Texarkana 2019, no pet.) (citing *R.H. v. D.A.*, No. 03-16-00442-CV, 2017 Tex. App LEXIS 1743, at *7 (Tex. App.—Austin Mar. 2, 2017, pet. dism'd) (mem. op.)). However, a factfinder may infer the present fitness of the parent to be managing conservator from the parent's recent, deliberate past misconduct. *Id.* Based on the evidence before it regarding Mother's past drug use—including

9

the length of her sobriety and the severity of her prior drug use—the trial court could have reasonably inferred that when Grandfather and Uncle filed their petition, Mother's drug use would probably result in serious harm to the child's physical or emotional well-being. *See Whitworth*, 222 S.W.3d at 623. Consequently, we cannot conclude that the trial court's resolution of this factual issue is arbitrary or unreasonable or that its determination that Grandfather and Uncle have established standing is legally incorrect.[2]

## CONCLUSION

Because we cannot conclude that the trial court abused its discretion in denying Mother's motion to dismiss, her petition for mandamus relief is denied. *See* Tex. R. App. P. 52.8(a).

---

[2] In addition to Section 102.004(a)(1) of the Family Code, Grandfather and Uncle also pleaded that they have standing to file suit under Section 102.003, subsection (a)(9) and subsection (a)(11), and under Section 102.004(b). *See* Tex. Fam. Code §§ 102.003(a)(9) (establishing that original suit may be filed by "person, other than a foster parent, who has had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition"), (a)(11) (establishing that original suit may be filed by "person with whom the child and the child's guardian, managing conservator, or parent have resided for at least six months ending not more than 90 days preceding the date of the filing of the petition if the child's guardian, managing conservator, or parent is deceased at the time of the filing of the petition"), .004(b) (establishing that grandparent may not file original suit requesting possessory conservatorship but that court may grant grandparent leave to intervene in pending suit under certain circumstances). In her petition, Mother argues that the trial court abused its discretion to the extent it concluded that Grandfather and Uncle established standing under any of these statutory provisions. Because we determine that the trial court could have reasonably concluded that Grandfather and Uncle established standing under Section 102.004(a)(1), we need not decide whether the trial court would have jurisdiction under the other pleaded grounds.

_____

Chari L. Kelly, Justice

Before Chief Justice Rose, Justices Kelly and Smith

Filed:   October 28, 2020