

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-22-00501-CV

———————————————

DFW INVESTMENT PROPERTIES ENTERPRISES, LLC, Appellant

V.

ESTEBAN AGUINAGA, Appellee

On Appeal from the 153rd District Court
Tarrant County, Texas
Trial Court No. 153-334974-22

Before Sudderth, C.J.; Kerr and Walker, JJ.
Memorandum Opinion by Justice Walker

**MEMORANDUM OPINION**

Appellant DFW Investment Properties Enterprises, LLC, (DFW) appeals from the trial court's orders granting a default judgment in favor of Appellee Esteban Aguinaga and denying DFW's motion for new trial. DFW argues in three issues on appeal that (1) this court should dismiss the appeal because there is no final judgment, (2) the case should be remanded for a new trial based upon the standards of *Craddock*,[1] and (3) Aguinaga's petition discloses facts that invalidate his claims in whole or in part. Because we hold that that the trial court abused its discretion in denying the motion for new trial, we reverse and remand to the trial court.

## I. BACKGROUND

Winifred Douglas Alford (Senior) and Lillie Mae Alford are the parents of Winifred Douglas Alford (Junior)[2] and Lachunda (Alford) Sparks. They divorced in 1973, and Lillie Mae was awarded the property located at 1013 East Shaw Street, Fort Worth, Texas in the divorce decree. On July 20, 2011, Aguinaga entered into a "Property Contract" with "Lili Alford"[3] and "Winifred Alford" to purchase the property at 1013 East Shaw Street. The contract does not indicate whether "Winifred

---

[1] *Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124 (Tex. [Comm'n Op.] 1939).

[2] The record does not indicate the use of a suffix by either of the men named Winifred Douglas Alford. However, for clarity we will refer to the father as Alford Senior and the son as Alford Junior.

[3] We note that the divorce decree states her name as Lillie Mae Alford.

Alford" refers to Alford Senior or Junior, but Aguinaga stated in his affidavit that it was Senior. The contract was signed by Aguinaga and Winifred Alford, but not by Lillie Mae Alford, the record title holder at that time. The contract states that Aguinaga agreed to pay $13,000 for the property—a down payment of $6,500 and the remainder within 30 days of purchase. Aguinaga stated in his affidavit that he performed all of his contractual obligations pursuant to the contract. However, Aguinaga never obtained a deed to the property.

Less than a month after the contract for the sale of the property was signed, Lillie Mae Alford died intestate on August 10, 2011. Alford Junior and Sparks are the heirs of Lillie Mae's estate. After Lillie Mae's death, a "Purchase Option Agreement" for the property at 1013 East Shaw Street was entered into on August 22, 2011, between "Owner" and "Buyer," which stated that "Buyer" pays to "Owner" $13,000 in consideration for the option set forth in the agreement to purchase the property. The option expired on August 23, 2011. The agreement is signed by Winifred Alford as "Owner," but the signature of the "Buyer" is illegible.[4]

On June 17, 2022, Sparks and Alford Junior, as grantors, signed a Warranty Deed with Vendor's Lien to DFW, as grantee, for the property at 1013 East Shaw Street. DFW paid $65,000 in exchange for title to the property.

---

[4] Aguinaga attached the agreement to his petition but does not refer to it in his petition, identify himself as the "buyer" in the agreement, or indicate whether Alford Senior or Alford Junior signed the agreement as "Owner."

On July 27, 2022, Aguinaga filed suit against Alford Senior, Alford Junior, Sparks, and DFW alleging causes of action for trespass to try title, adverse possession, quiet title, and a request for a declaratory judgment against all defendants. Aguinaga also asserted a claim for breach of contract against Alford Senior.

The return of service shows that DFW was served on August 11, 2022, and Sparks was served on August 4, 2022. There is no return of service in the record for Alford Senior or Alford Junior. In its motion for new trial, DFW stated that Alford Senior died on July 24, 2014. After there was no answer from DFW or Sparks, Aguinaga filed a motion for default judgment against them on September 14, 2022. The following day, the trial court entered a default judgment against DFW and Sparks for trespass to try title, adverse possession, and quiet title and issued a declaratory judgment. Both DFW and Sparks filed motions for new trial, and the trial court denied the motions. DFW filed this appeal from the trial court's orders granting Aguinaga's motion for default judgment and denying its motion for new trial.[5]

## II. JURISDICTION

We first address our jurisdiction to hear this appeal. After filing a notice of appeal, DFW filed a Notice of Issues Regarding Finality of Judgment so that this court could evaluate whether it had jurisdiction to proceed with the appeal. This court issued a letter on January 30, 2023, that stated we would consider the issue of

---

[5] Sparks is not a party to this appeal.

jurisdiction when the case was submitted. We requested that the parties' briefs on the merits include a discussion of the jurisdictional issue. DFW argues in its first issue that this court does not have jurisdiction over this appeal because the default judgment did not dispose of all claims and all parties.

## A. APPLICABLE LAW

We have jurisdiction to consider appeals only from final judgments or from interlocutory orders made immediately appealable by statute. *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001). An order that does not dispose of all pending parties and claims remains interlocutory and unappealable until a final judgment is rendered unless a statutory exception applies. *See id.*; *In re Roxsane R.*, 249 S.W.3d 764, 774–75 (Tex. App.—Fort Worth 2008, orig. proceeding).

In *Youngstown Sheet & Tube Co. v. Penn*, the trial court's summary judgment disposed of all named parties in the petition except for one. 363 S.W.2d 230, 232 (Tex. 1962). The court noted that the defendant was never served with a citation, that the defendant did not answer, and that there was nothing to indicate that the petitioner ever expected to obtain service upon him. *Id.* The court held that in those circumstances, "the case stands as if there had been a discontinuance as to [defendant], and the judgment is to be regarded as final for the purposes of appeal." *Id.*

In *M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 675 (Tex. 2004), the court stated that the holding in *Youngstown* was not altered by *Lehmann*. The court relied on

5

*Youngstown* and concluded that the trial court's order granting summary judgment was final for purposes of appeal even though it did not dispose of all the parties because the defendant was never served and not expected to be served. *Id.*

The *Youngstown* standard to determine whether a judgment is final for purposes of appeal is articulated as a three-factor test: "(1) the judgment expressly disposes of some, but not all, defendants; (2) the only remaining defendants have not been served or answered; and (3) nothing in the record indicates that the plaintiff ever expected to obtain service on the unserved defendants[.]" *Fair Oaks Hous. Partners, LP v. Hernandez*, 616 S.W.3d 602, 605 (Tex. App.—Houston [14th Dist.] 2020, no pet.).

## B. DISCUSSION

Aguinaga's petition names Alford Senior, Alford Junior, Sparks, and DFW as defendants. The trial court's order granting Aguinaga's default judgment disposes only of Sparks and DFW. The order disposes of the four causes of action against Sparks and DFW but does not dispose of the breach of contract claim against Alford Senior.

The record shows that Aguinaga requested service against all four defendants and provided an address for each defendant. The request for service does not distinguish between Alford Senior and Alford Junior. There is nothing in the record to indicate whether the stated address is a current or last known address for the Alford defendants. Further, there is nothing in the record to show that Aguinaga requested substituted service for the Alford defendants. *See* Tex. R. Civ.

6

Proc. 106(b)(2). From the record before us, neither Alford Senior nor Alford Junior were served, filed an answer, or appeared before the trial court.

According to the motion for new trial filed by DFW, Alford Senior died on July 24, 2014. The record shows that after obtaining service for DFW and Sparks, Aguinaga filed a motion for default judgment against them, but did not include either of the Alford defendants in its motion. There is nothing in the record before us to show that Aguinaga expected to obtain service upon Alford Senior and Alford Junior. *See Fair Oaks Hous. Partners, LP,* 616 S.W.3d at 607.

Accordingly, Aguinaga has satisfied the *Youngstown* factors and the case "stands as if there had been a discontinuance" as to Alford Senior and Alford Junior. *Id.* (quoting *Youngstown*, 363 S.W.2d at 232). We overrule the first issue.

## III. *CRADDOCK* ELEMENTS

In its motion for new trial, DFW argued that it satisfied the elements of *Craddock* to set aside the default judgment. 133 S.W.2d at 126. In the second issue DFW challenges the trial court's denial of the motion for new trial and argues that because the *Craddock* elements were satisfied, the case should be remanded for a new trial.

### A. APPLICABLE LAW

The decision to grant a new trial after a default judgment is within the discretion of the trial court. *Craddock* 133 S.W.2d at 126; *In re E.P.C.*, No. 02-10-00050-CV, 2010 WL 5187691, at *1 (Tex. App.—Fort Worth Dec. 23, 2010, no pet.)

7

(mem. op.); *Johnson v. Edmonds*, 712 S.W.2d 651, 652 (Tex. App.—Fort Worth 1986, no writ). In determining whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable. *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004); *E.P.C.*, 2010 WL 5187691, at *1. An appellate court cannot conclude that a trial court abused its discretion merely because the appellate court would have ruled differently in the same circumstances. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995); *see also Low v. Henry*, 221 S.W.3d 609, 620 (Tex. 2007). In other words, an appellate court cannot merely substitute its judgment for that of the trial court. *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003).

When, as in this case, "no findings of fact and conclusions of law are filed, the denial of a motion to set aside the default judgment and for new trial must be upheld on any legal theory supported by the evidence." *Huey-You v. Kimp*, No. 02–16–00172–CV, 2018 WL 359633, at *5 (Tex. App.—Fort Worth Jan. 11, 2018, pet. denied) (mem. op. on reh'g); *see Strackbein v. Prewitt*, 671 S.W.2d 37, 38 (Tex. 1984).

*Craddock* established the standard for trial courts to use in deciding whether a default judgment should be set aside and a new trial granted. 133 S.W.2d at 126. The movant must establish (1) that the failure to appear "was not intentional, or the result of conscious indifference . . ., but was due to a mistake or an accident"; (2) that the movant has a meritorious defense; and (3) that the granting of the motion for new

8

trial "will occasion no delay or otherwise work an injury to the plaintiff." *Id.*; *E.P.C.*, 2010 WL 5187691, at *1. "To support the motion for new trial, the defendant must make factual allegations that are supported by evidence, such as accompanying affidavits setting forth facts, which, if true, satisfy the standard." *Ramirez v. LaCombe*, No. 01-17-00977-CV, 2019 WL 922058, at *3 (Tex. App.—Houston [1st Dist.] Feb. 26, 2019, no pet.) (mem. op.) (citations omitted). However, conclusory allegations are insufficient. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 82 (Tex. 1992). If the party requesting a new trial meets all three requirements of the *Craddock* test, the trial court commits an abuse of discretion if it does not grant a new trial. *Old Republic Ins. Co. v. Scott*, 873 S.W.2d 381, 382 (Tex. 1994).

## B. FAILURE TO APPEAR NOT INTENTIONAL OR RESULT OF CONSCIOUS INDIFFERENCE

In determining whether the failure to appear was due to intentional disregard or conscious indifference, the court "must look to the knowledge and acts of the defendant." *Strackbein*, 671 S.W.2d at 39. If the factual assertions in the defendant's affidavit are uncontroverted by the plaintiff, the defendant satisfies his burden if his affidavit sets forth facts that, if true, negate intentional or consciously indifferent conduct by the defendant. *Dir., State Emps. Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 269 (Tex. 1994).

The party seeking a new trial has the burden to prove the lack of intent or conscious indifference by offering some type of excuse for the failure to answer, but

9

the excuse need not necessarily be a good excuse. *Sharpe v. Kilcoyne*, 962 S.W.2d 697, 701 (Tex. App.—Fort Worth 1998, no pet.); *Liberty Mut. Fire Ins. Co. v. Ybarra*, 751 S.W.2d 615, 617–18 (Tex. App.—El Paso 1988, no writ). In other words, a "failure to appear is not intentional or due to conscious indifference . . . merely because it is deliberate; it must also be without adequate justification. Proof of such justification—accident, mistake, or other reasonable explanation—negates the intent or conscious indifference for which reinstatement can be denied." *Smith v. Babcock & Wilcox Constr. Co.*, 913 S.W.2d 467, 468 (Tex. 1995).

In support of its allegation that the failure to timely answer was not intentional or the result of conscious indifference, DFW offered the affidavit of its owner and managing director, Alfredo Goytia. Goytia stated in the affidavit:

> I received emails from the registered agent regarding service of citation for this lawsuit, but I mistakenly thought the notices were reminders associated with the recent municipal notices DFW had received and I therefore did not open the emails relating to citation.
>
> Until research was conducted following the entry of the interlocutory default judgment, I did not become aware that a hardcopy of the citation was reportedly sent to DFW's post office box, perhaps because items too large for the post office box were held at the counter for pickup with a notice placed in the box that was inadvertently missed.
>
> On or about September 8, 2022, I was first alerted to this lawsuit by the wholesaler who had brought me the opportunity to purchase the Property. The wholesaler told me he had been alerted to the lawsuit by one of the sellers.
>
> I promptly began working to obtain legal representation to assist in DFW's response to the lawsuit because DFW desires to be heard on the merits in this lawsuit. I immediately called an attorney friend who is

10

in the title business and, based on his advice, I initiated a claim with my title insurance company to obtain an attorney.

Until I contacted [Aguinaga] several weeks after closing, I thought [Aguinaga] was a tenant who was no longer paying rent. I had no reason to suspect he claimed title. When I contacted him in person and introduced myself as the manager for the new owner, [Aguinaga] told me he owned the house. I asked [Aguinaga] if he had paperwork, which he said he had. However, he never provided the paperwork he claimed to have and refused to communicate with me further despite several attempts to reach out to him. To my knowledge, [Aguinaga] did not repudiate DFW's or DFW's predecessor's title, provide notice of a claim of exclusive title, or do anything to establish exclusive possession and title to the Property prior to the filing of the lawsuit on July 27, 2022. As the manager of DFW who handled the purchase of the Property, I had no reason to think that the occupant claimed title.

DFW did not fail to answer the lawsuit by the deadline because the company didn't care. As manager of DFW who is responsible for receiving notices of citation and responding to lawsuits, I certainly do care about the lawsuit, but I was mistaken about the notices received regarding service of citation. DFW didn't file an answer to the lawsuit on time because of my mistake. I would appreciate the opportunity to be heard in this lawsuit. DFW would be unfairly harmed if we are not allowed to test the claims being made against its title.

Aguinaga served the registered agent for DFW, and there is no allegation that the registered agent was improperly served. According to Goytia, the registered agent sent an email providing notice of the lawsuit, but he mistakenly did not open it. DFW also inadvertently did not pick up the hard copy of the petition from the post office counter. Aguinaga filed a response to DFW's motion for new trial stating that DFW's decision not to open the emails "constitutes intentional disregard or conscious indifference." Aguinaga does not provide any controverting evidence to show that

11

Goytia had actual notice of the lawsuit or that the statements in his affidavit were false.

Intentional or conscious indifference for purposes of *Craddock* means "that the defendant knew it was sued but did not care." *Fidelity & Guar. Ins. Co. v. Drewery Constr. Co.,* 186 S.W.3d 571, 576 (Tex. 2006). A defendant's mere negligence does not show conscious indifference. *Id.; see also Levine v. Shackelford, Melton, & McKinley, L.L.P.,* 248 S.W.3d 166, 168 (Tex. 2008). Goytia's affidavit reveals negligence on the part of DFW, but it does not establish that DFW knew there was a lawsuit, did not care, and intentionally failed to answer. *See Titan Indem. Co. v. Old S. Ins. Grp., Inc.,* 221 S.W.3d 703, 710 (Tex. App.—San Antonio 2006, no pet.). Because the factual assertions in Goytia's affidavit are uncontroverted by Aguinaga and set forth facts that show the failure to answer was the result of a mistake, DFW satisfied its burden to negate intentional or consciously indifferent conduct. *See Dir., State Emps. Workers' Comp. Div.,* 889 S.W.2d at 269.

## C. MERITORIOUS DEFENSE

The second prong of the *Craddock* test requires DFW to "set up" a meritorious defense in its motion for new trial. *Dolgencorp of Texas, Inc. v. Lerma*, 288 S.W.3d 922, 927–28 (Tex. 2009). Setting up a meritorious defense does not require proof "in the accepted sense." *Id.* at 928 (quoting *Ivy v. Carrell,* 407 S.W.2d 212, 214 (Tex. 1966)). Rather, the motion sets up a meritorious defense if it (1) alleges facts which in law would constitute a defense to the plaintiff's cause of action and (2) is supported by

12

affidavits or other evidence providing prima facie proof that the defendant has such a defense. *Id.* Once such requirements are met, controverting evidence offered by the nonmovant should not be considered. *Id.*

In his petition, Aguinaga alleged causes of action for trespass to try title, adverse possession, quiet title, and a request for a declaratory judgment against DFW. To prevail in a trespass to try title action, Aguinaga must (1) prove a regular chain of conveyances from the sovereign, (2) establish superior title out of a common source, (3) prove title by limitations, or (4) prove title by prior possession coupled with proof that the possession was not abandoned. *Brumley v. McDuff*, 616 S.W.3d 826, 832 (Tex. 2021). In a quiet-title suit, Aguinaga must prove, as a matter of law, that he has a right of ownership and that the adverse claim is a cloud on the title that equity will remove. *Id.*

In his petition, Aguinaga stated that he is the superior title holder to the property, that he has maintained the property, that he has been in exclusive possession of the property for eleven years, and that he has not abandoned the property. In his action to quiet title, Aguinaga stated that DFW has no rights under the invalid warranty deed.

In defense, DFW provided proof that Lillie Mae Alford was the record title holder at the time of the alleged contract for sale to Aguinaga. Lillie Mae did not sign the property contract conveying the property to Aguinaga. Alford Senior signed the contract as owner, but DFW provided evidence that he was not the owner at that

13

time. Aguinaga admits that he never obtained the deed to the property. DFW obtained the warranty deed from Alford Junior and Sparks—Lillie Mae's heirs. DFW argued in its motion for new trial that any claim of adverse possession was suspended for twelve months following the deaths of Lillie Mae and Alford Senior. DFW's motion therefore sets up a meritorious defense by alleging facts which in law would constitute a defense to Aguinaga's causes of action, and it is supported by evidence providing prima facie proof that DFW has such a defense. *See Dolgencorp of Texas, Inc.,* 288 S.W.3d at 928.

### D. DELAY OR INJURY TO AGUINAGA

The trial court signed the order granting the default judgment on September 15, 2022. DFW filed an answer, special exceptions, and affirmative defenses and asserted cross-claims on September 27, 2022. DFW stated in its motion for new trial that it was prepared to go to trial and would reimburse Aguinaga for any costs caused by the failure to timely answer. Once DFW alleged that granting its motion for new trial would not injure Aguinaga, the burden shifted to Aguinaga to prove injury. *Id.* at 929. Aguinaga did not allege any specific injury that would negate DFW's showing of no undue delay or injury. Aguinaga failed to prove that the granting of a new trial would cause such harm or injury as would preclude the granting of a new trial. Therefore, DFW satisfied the third prong of the *Craddock* test. *See id.*

14

Because DFW's motion for new trial satisfied all three elements of the *Craddock* test, the trial court abused its discretion by denying the motion. Accordingly, we sustain DFW's second issue on appeal. Because of our disposition of the second issue, we need not address DFW's third issue on appeal. Tex. R. App. P. 47.1.

## IV. CONCLUSION

Having sustained DFW's second issue, we reverse the trial court's orders granting Aguinaga's motion for default judgment and denying DFW's motion for new trial and remand the case to the trial court for further proceedings consistent with this opinion.

/s/ Brian Walker

Brian Walker
Justice

Delivered: June 22, 2023